[Civ. No. 28248.   Second Dist., Div. Four.   Nov. 16, 1964.]

GORDON BOLLER, Plaintiff and Appellant, v. SIGNAL OIL & GAS CO., Defendant and Respondent.

Cooper & Boller and David B. Boller for Plaintiff and Appellant.

C. Neil Ash, Brewster L. Arms and Norman G. Kuch for Defendant and Appellant.

KINGSLEY, J.—Plaintiff was retained by defendant to prosecute an appeal from an unfavorable judgment rendered by the Superior Court of Santa Barbara County. After successful completion of the case, a dispute arose over the amount of his fee and, the parties being unable to reach agreement, the present action resulted. For reasons hereinafter set forth, we conclude that the trial court applied erroneous standards and, as a result, arrived at a fee for plaintiff's services so far below a proper fee as to amount to an abuse of its discretion.

At the time he was retained by defendant, plaintiff had practiced law in this state for 45 years. For 35 of those years he had been a member of the staff of the County Counsel of Los Angeles County, devoting himself chiefly to the handling

of cases involving the law of real and personal property taxation. It is conceded that he was, and is, one of the leading, if not the leading, authority on such law in the State of California. After he had retired from the service of the county, plaintiff undertook private practice, including a part-time arrangement with the City of Los Angeles, and other representation in problems involving taxation.

For several years, defendant had been engaged in a dispute with the County of Santa Barbara over a claim by defendant that, for many years, it had illegally been taxed on offshore oil and gas leases, for the benefit of certain school districts, although the boundaries of those districts did not encompass the area of the leases. Not having been successful in getting the board of supervisors either to approve or to reject its refund claims, defendant, acting through its house counsel, had sued in the superior court for a writ of mandate to compel the board to take one action or the other. A demurrer to the complaint was sustained without leave to amend and judgment adverse to the defendant had been entered.

At this juncture, defendant approached plaintiff, seeking to have him undertake the prosecution of an appeal from this judgment and take such other steps as might be required to secure formal action by the board of supervisors on the refund claims. It is to be noted that the refund claims themselves, involving over a quarter of a million dollars, plus interest, were not directly involved in the matters as to which plaintiff's services were desired; but, since suit on the claims could not be brought until after they had been rejected by the board, the successful prosecution of the appeal in the mandate case was a necessary prerequisite to any attempt to recover on the claims themselves.

It was the theory of the trial court, in the mandate action, that the claims involved were subject to the provisions of the Government Code (commonly known as the general claims statutes) as those statutes then read; and that, under those statutes, no action having been taken by the board in the interim, the claims had been rejected by operation of law 90 days after they were filed. (If this view was correct, the statute of limitations for suit on the claims had long since expired.)

It was the theory of the mandate action that the claims were governed exclusively by the provisions of the Revenue and Taxation Code, under which they remained open before the board until formal action was taken. (Under this view,

defendant could still sue on its claims, since the statute of limitations would not begin to run until the formal rejection.)

After conferences with defendant's general counsel, and other members of its legal department, plaintiff was retained to prosecute the appeal. It is admitted that, under the retainer, defendant was to provide necessary secretarial help, stationery, use of its law library, and was to bear the out-of-pocket costs of the litigation. Defendant did not agree to provide any assistance to plaintiff by way of law clerks, research assistants, or junior counsel, and no assistance of this sort was given to him, although the general counsel and his assistant did review plaintiff's briefs and did consult with him, at his request, on certain matters of tactics and strategy. As the present action evidences, the arrangement as to the fee to be paid plaintiff was something less than definite and certain.

Plaintiff proceeded with the appeal. He reviewed the record in the trial court, took action which he deemed necessary for the elimination from the clerk's transcript of certain items which he regarded as surplusage but as possibly prejudicial on appeal, prepared and filed an opening brief, closing brief, argued the appeal, prepared and filed a formal written reply to the county's oral argument, an answer to a petition for rehearing and an answer to a petition for hearing in the Supreme Court. His efforts were successful, the judgment being reversed on appeal (*Signal Oil & Gas Co.* v. *Bradbury* (1960) 183 Cal.App.2d 40 [6 Cal.Rptr. 736]), with an opinion in which the defendant's contentions as to the applicable claims procedure were fully sustained. Thereafter, complications arose in the trial court over the interpretation of the remittitur, necessitating a court appearance in Santa Barbara County in order to settle the dispute. After a second trip to that county, and a conference with the county's counsel, the board took the desired final action, rejecting the claims, and clearing the way for defendant's suit to recover its refunds. At the time of the trial of this action, the refund action was pending, a motion for summary judgment by defendant having been made.[1]

[1]Appellant has moved to augment the record by including the records of the Superior Court for Santa Barbara County showing the ultimate disposition of the action on the claims. We review the action of the trial court on the record as made before that court (Witkin, Cal. Procedure (1954) [1963 Supp., p. 776]; *Adler* v. *City of Pasadena* (1964) 229 Cal.App.2d 518, 531 [40 Cal.Rptr. 373]; *McConnell* v. *All-Coverage Ins. Exch.* (1964) 229 Cal.App.2d 735, 749 [40 Cal.Rptr. 587]); matters

During the course of his representation of defendant, plaintiff was paid the sum of $5,000 "on account." After the work was completed, he submitted a final statement, showing that he had devoted 641½ hours and requesting payment at the rate of $35 per hour.[2] Defendant objected and a conference was held on the subject, defendant contending that no arrangement for an hourly fee had been made and that it had understood that plaintiff had agreed to accept $5,000 as a flat fee for all of his services. The conference broke up without resolution of the dispute and plaintiff brought the present action.

His complaint was cast in two counts: one on an express oral contract for a fee of $35 per hour; the second on a common count for the reasonable value of his services. After crediting the $5,000 advance, the first count sought recovery (in addition to the costs item above mentioned, of $17,452.50; on the second count, plaintiff, not being bound by the $35 per hour figure, prayed for an unpaid balance of $28,874.51.

After a trial without a jury, lasting five days, the court found against plaintiff on the express contract but in his favor on the common count, fixing the value of the services at $7,500. After crediting the advance, judgment was entered in plaintiff's favor for the $2,500 balance of fees. Deeming this insufficient, plaintiff appeals.

Plaintiff does not here question the finding against him as to the express contract, contending 'only that the trial court misapplied the settled rules for determination of attorney fees, with a resulting finding so inadequate as to amount to an abuse of discretion.

█ The basic principles governing the fixing of the fee of an attorney are well settled: "[T]he nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training

occurring after judgment in the trial court clearly are not properly part of a record on this appeal.

In addition, the only purpose suggested for the proposed augmentation is to show the amount involved. This fact already appears from the opinion of this court in the mandate proceeding and from the pleadings and record already before us.

[2]The statement also showed a balance of $7.01 as due on account of expenses; and recovery of this was prayed for in the complaint. Liability for this small sum was conceded at the trial and is not here in issue.

and ability in trying the cause, and the time consumed."
(*Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 679 [169 P.2d
453], as quoted in *Hurst* v. *Hurst* (1964) 227 Cal.App.2d
859, 871 [39 Cal.Rptr. 162] ; see also *City of Los Angeles* v.
*Los Angeles Inyo Farms Co.* (1933) 134 Cal.App. 268 [25
P.2d 224].)

■ Defendant does not dispute these rules as an abstract
proposition, but contends that the trial court properly applied
them and points to the rule set out in *Freese* v. *Pennie* (1895)
110 Cal. 467, 470 [42 P. 978], that when a trial court has
exercised its judgment as to a proper fee, ". . . an appellate
court, only has the right to interfere with its judgment when
a plain and palpable abuse of its discretion (for it has a
large discretion in such matters) has occurred." However,
in this case, the respect which we normally pay to the judg-
ment of a trial court is necessarily diminished by the fact
that that judgment palpably was based on two misconceptions
of the rules and of the facts, and that we have, therefore, no
indication as to the fee which the court might have fixed had
it viewed the nature of plaintiff's services as we hold they
should have been regarded.

Throughout the trial, the court continually expressed its
personal opinion that plaintiff had devoted more hours to
the case than were warranted, and that he had concerned
himself with, and had spent time on, matters which the trial
court in the present action thought immaterial. While the
trial court quite properly considered the necessity for the
time spent by plaintiff for which he sought compensation,
and was entitled to exercise its professional judgment in
determining whether or not plaintiff had devoted more time to
the case than was justified, still we think that, in this instance,
the court unduly attempted to substitute its judgment for
that of the plaintiff in matters which the employment contract
left to plaintiff's determination. Plaintiff had been given the
sole responsibility for the appeal, and it was his judgment,
and his method of operation, which defendant had retained.
The record shows that members of defendant's legal staff
who had worked with and under plaintiff in the office of the
county counsel were well aware of his work habits and of his
insistence of extreme care and thoroughness in preparation
for a lawsuit. Except perhaps for a relatively small amount
of time devoted to settling the clerk's transcript, the record
shows no more than that plaintiff, conscious of the importance
of the case, and of his obligation to give to his client the

fullest measure of the experience which had brought about his retainer, was meticulously careful in his research and in his drafting. No two lawyers work in the same manner, or at the same speed, nor do two lawyers necessarily agree on the importance of particular steps in the prosecution of a case. Were the matter determinative, we would hesitate to discount, to the extent that it was discounted by the trial court, the time which plaintiff conscientiously devoted to a successful result.

However, since the case was decided, and is before us, on the issue of a reasonable fee, it is clear that the amount of time actually devoted is but a small part of the total complex of matters to be considered, and that the trial court unduly emphasized this factor to the substantial exclusion of other and more controlling considerations.

The trial court's second—and most serious—error lay in its repeated statement that the case in which plaintiff was retained was not one which called on his stipulated expertise as a "tax" lawyer in both trial and appellate practice. This attitude culminated in Finding of Fact V.10: "It is true: that Plaintiff's prior background and qualifications in the field of ad valorem property tax matters was not involved in the subject matter in which Plaintiff rendered his services, for the Appeal involved primarily the question of statutory construction in which Plaintiff was not an expert nor particularly expert."[3]

Not only is this finding contrary to the testimony of the only two witnesses who were shown to have had any background of experience with the subject matter involved in the case which plaintiff handled—namely, plaintiff himself and his witness O'Neill; but it is counter to our own knowledge and directly contrary to the testimony of defendant's own present chief counsel who stated: "I consider it to be a statutory interpretation case, but it was involved in the ad valorem field. When I say Mr. Boller was an expert in the field, I am referring to the entire field. He had taken many of the similar cases when I was in the County Counsel's office."

It is true that the narrow issue in *Signal Oil & Gas Co.* v.

---

[3] Appellant asks us, by way of augmentation of the record, to take notice of a large number of reported cases, in which he was engaged as counsel, in which various problems of statutory interpretation allegedly were raised and decided. We deny the request. Appellant made no effort to explore this issue before the trial court and must stand or fall here on the evidence he produced there.

*Bradbury, supra* (1960) 183 Cal.App.2d 40, was that of statutory construction. But a case requiring the construction of a criminal statute, or a choice between two apparently conflicting criminal statutes, does not cease to be a ''criminal'' case, nor does a case involving the construction of any other statutory provision cease to be one involving expertise in the field of law with which the statute deals. It is true that books and articles have been written on the broad topic of ''statutory construction,'' and that such a subject is occasionally included in law school curricula. But, among practising lawyers, expertise is demonstrated not by mere acquaintanceship with a set of formal canons of construction but by the skill involved in selecting from among competing canons those which the broad public policy inherent in a special field of law makes especially pertinent and persuasive.

This is particularly true in the present case. For many years, one major problem facing practitioners, whether representing the government or the citizen, in cases involving tax assessments and collection, has been the complexity of the procedures by which rights could be litigated. (See, for example, and only as a partial listing: (1941) 14 So.Cal.L.Rev. 276; (1951-1952) 24 So.Cal.L.Rev. 252 and 428, 25 So.Cal. L.Rev. 395; (1953) 27 So.Cal.Law.Rev. 415.) One reason, expressed by defendant's own witnesses, for retaining plaintiff to prosecute the appeal in the mandate proceeding was the fact that his work in the office of the county counsel had made him familiar with the procedure for initiating tax refund suits and his authorship of a county counsel's opinion dealing with the very subject matter of the *Bradbury* case. To say that plaintiff was not an expert in the field of law involved— namely the law governing the presentation and rejection of claims for tax refunds—and that he was not retained because of that expertise and did not utilize that expertise to secure victory for his client is not only unsupported by the evidence but is directly contrary to the evidence and to the history of tax litigation in this state.

The problem presented to plaintiff was complex and difficult. He was required to secure a decision which ran counter to the long established administrative construction of the statutes involved, and counter to the strong implication of the then most recent judicial decision. This he was asked to do after an adverse ruling in the trial court, with all of the adverse intendments in favor of such a decision, on a record which someone else had prepared. He had to overcome

a strong argument of laches based on his client's failure to even recognize its rights for 22 years or to litigate them for another 5. He brought to this task the background of years of experience in such problems and he was hired because he had that background. While his efforts did not directly procure for his client the desired refunds, still any possibility of securing those refunds depended on his success and the case therefore "involved" well over a quarter of a million dollars. Except possibly for some quibble as to the necessity of all of the time expended, every element relied on by the authorities was in plaintiff's favor.

Except for the parties themselves, the only evidence as to the reasonable value of plaintiff's services came from three witnesses. Of these, two, who fixed amounts of $6,000 and $5,350 respectively, had no background of experience in this field of litigation, although both had a long and distinguished record in trial and appellate work in other areas. It is clear that neither witness was aware of the real nature of the litigation and that both based their estimates solely on their own opinions as to the time factor with little regard to the other matters involved in fee fixing. The only witness —O'Neill—who had a background in the area of tax refund claims and litigation, fixed a reasonable fee at $25,000, even though he also testified that he thought plaintiff had invested more time than other lawyers might have thought necessary. The record in this case establishes Mr. O'Neill as an expert of high standing in this field. We think that the trial court improperly deprecated his testimony in favor of the other witnesses not so well versed in the problem of handling the case in which plaintiff was retained. However, since O'Neill's testimony did not clearly reflect any credit to which defendant might be entitled by reason of relieving plaintiff of the usual office overhead of a lawyer, we conclude that a fee of $17,500 would be a reasonable fee for the services which plaintiff is shown to have rendered.

It is clear that all evidence which the parties regarded as important was produced at the trial. Since we must reject the trial court's allowance as based on improper considerations and as ignoring proper considerations, and since this court possesses the same basic expertise with regard to counsel fees as does a trial court, we regard this as a proper case to exercise our constitutional power, as implemented by section 956a of the Code of Civil Procedure and by rule 23(a) of the California Rules of Court, to modify the findings of fact and conclusions of law rather than to reverse for a new trial.

Accordingly:

(1) The findings of fact, heretofore made and filed in this matter, are hereby modified as follows:

(a) Finding of Fact No. III.11 is modified to read as follows: "The total gross time expended by Plaintiff in the performance of his said services was 641½ hours."

(b) Finding of Fact No. III.15 is modified by deleting the figure "$7,500" and substituting therefor the figure "$17,500."

(c) Finding of Fact No. III.16 is modified by deleting the figure "$2,500" and substituting therefor the figure "$12,500."

(d) Finding of Fact No. V.6 is deleted in its entirety.

(e) The third paragraph of Finding of Fact No. V.7 is modified by deleting the figure "$2,500" and substituting therefor the figure "$12,500."

(f) Finding of Fact No. V.10 is modified to read as follows: "It is true that Plaintiff's prior background and qualifications in the field of ad valorem property tax matters was involved in the subject matter in which plaintiff rendered his services, for the Appeal involved primarily a question of the construction and application of statutes relating to the field in which plaintiff was an expert."

(g) Finding of Fact No. V.11 is modified by deleting the figures "$7,500" and substituting therefor the figures "$17,500."

(h) Finding of Fact No. V.14 is deleted in its entirety.

(i) Finding of Fact No. V.15 is modified by deleting the figures "$7,500" and substituting therefor the figures "$17,500."

(j) Finding of Fact No. V.19 is modified by deleting the figures "$7,500" and substituting therefor the figures "$17,500."

(k) Finding of Fact No. V.20 is modified by deleting from the second line thereof the figures "$7,500" and substituting therefor the figures "$17,500" and by deleting from the fifth line thereof the figures "$2,500" and substituting therefor the figures "$12,500."

(l) Finding of Fact No. V.23 is modified to read as follows: "The answer to the supplementary issue, 'Time expended by Plaintiff in rendering legal services,' is: that Plaintiff did expend total gross hours to the extent of 641½ hours."

(m) Finding of Fact No. V.24 is modified by deleting

658

the figures ''$2,500'' and substituting therefor the figures ''$12,500.''

(2) The conclusions of law, heretofore made and filed in this matter are hereby modified as follows:

(a) Conclusion of Law No. III is modified by deleting from the second paragraph thereof the figures ''$7,500'' and substituting therefor the figures ''$17,500''; and by deleting from the third paragraph thereof the figures ''$2,500'' and substituting therefor the figures ''$12,500.''

(3) The judgment appealed from is modified by deleting from Paragraph I thereof the figures ''$2,507.01'' and substituting therefor the figures ''$12,507.01''; as so modified, the judgment is affirmed. Appellant shall recover his costs on appeal. The motion to augment the record is denied.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied December 2, 1964, and respondent's petition for a hearing by the Supreme Court was denied January 13, 1965. Burke, J., did not participate therein. Traynor, C. J., Peters, J., and Peek, J., were of the opinion that the petition should be granted.