[No. B004522. Second Dist., Div. One. Feb. 1, 1985.]

LEILA S. HATHAWAY et al., Plaintiffs and Respondents, v.
ARNOLD SPIRO et al., Defendants and Appellants.

COUNSEL

Bonne, Jones, Bridges, Mueller & O'Keefe, H. Gilbert Jones and Peter R. Osinoff for Defendants and Appellants.

Ian Herzog for Plaintiffs and Respondents.

OPINION

**MARGOLIS, J.**\*—Defendants-appellants Arnold Spiro, M.D., and Eduardo Velayos, M.D., appeal from a judgment against them and in favor of plaintiffs-respondents Leila S. Hathaway and Frank B. Hathaway.

### PARTIES

The plaintiffs were Leila S. Hathaway (Leila) and her husband, Frank B. Hathaway (Frank). The defendants in the trial court were Baldwin Park Community Hospital (Hospital), Robert Degnan, M.D. (Degnan), Arnold Spiro, M.D. (Spiro), and Eduardo Velayos, M.D. (Velayos).

### FACTS

This is a case of asserted medical malpractice. Leila was admitted to Hospital on August 15, 1977, by Degnan for delivery of her child. During the vaginal delivery, attended by Degnan, he performed an episiotomy.

---

*Assigned by the Chairperson of the Judicial Council.

Following discharge from Hospital, the laceration became a rectovaginal fistula and was so diagnosed by Spiro. Leila was readmitted to Hospital on August 27, 1977, and the fistula was repaired by defendants Spiro and Velayos. Their specialty is proctology.

While Leila was still in the hospital, the repair attempted by Spiro and Velayos began to break down. Since that time, she has had numerous problems which she attributes to the malpractice of all of the defendants. Frank's cause of action is for loss of consortium.

Plaintiffs' principal charges are as follows: against Degnan for negligently performing the episiotomy; against Spiro and Velayos for attempting prematurely to repair the fistula; against Hospital because of an allegedly inadequate review process to assure the competence of doctors having staff privileges. As for the timing of the attempted repair of the fistula, plaintiffs assert that a minimum of three months must elapse before any repair is attempted. Plaintiff asserts further that Spiro had attempted prematurely other repairs of rectovaginal fistulas at Hospital with similarly poor results and that Hospital did nothing to avoid repetitions.

### THE GENERAL AND SPECIAL VERDICTS

The jury, after deliberating for two days, returned the following general verdicts: 1. For plaintiff Leila and against defendant Spiro in the amount of $889,500; 2. For plaintiff Frank and against defendant Spiro in the amount of $50,000; 3. For plaintiff Leila and against defendant Velayos in the amount of $889,500; 4. For plaintiff Frank and against defendant Velayos in the amount of $50,000; 5. For plaintiff Leila and against defendant Hospital in the amount of $889,500; 6. For defendant Hospital and against defendant Frank; 7. For defendant Degnan and against plaintiff Leila; 8. For defendant Degnan and against plaintiff Frank.

At the same time, the jury returned the following special findings:

"Issue No. 1: Were plaintiffs, Leila Hathaway and Frank Hathaway, injured as a proximate result of the negligence of a physician who, at the time of the injury, was engaged in a *joint venture* with Baldwin Park Community Hospital? (Italics original.)

"Answer 'Yes' or 'No.'

"Answer: '*Yes.*'

"Issue No. 2: Was defendant Baldwin Park Community Hospital negligent in failing to carefully select, review or supervise the defendant physi-

cians (Dr. Robert Degnan, Dr. Arnold Spiro, and Dr. Eduardo Velayos) who were granted staff privileges at the hospital?

"Answer 'Yes' or 'No.'

"Answer: *'Yes.'*

"If you have answered Issue No. 2 'Yes,' then answer the following:

"Issue No. 2A: Was the negligence (failure to select, review or supervise) of defendant, Baldwin Park Community Hospital, a proximate cause of the injury to plaintiffs, Leila Hathaway and Frank Hathaway?

"Answer 'Yes' or 'No.'

"Answer: *'Yes.'*

"Issue No. 3: Was defendant Baldwin Park Community Hospital negligent in failing to use reasonable care in furnishing the plaintiff Leila Hathaway the care, attention, and protection reasonably required by her mental and physical condition?

"Answer 'Yes' or 'No.'

"Answer: *'Yes.'*

"Issue No. 4: Was defendant Robert Degnan, M.D., acting as the Baldwin Park Women's Clinic, the ostensible agent of Baldwin Park Community Hospital?

"Answer 'Yes' or 'No.'

"Answer: *'Yes.'*

"If you have answered Issue No. 4 'Yes,' then answer the following:

"Issue No. 4A: Did plaintiff Leila Hathaway reasonably rely on Doctor Degnan's apparent authority, acting as the Baldwin Park Women's Clinic, to act for and on behalf of Baldwin Park Community Hospital?

"Answer 'Yes' or 'No.'

"Answer: *'Yes.'*

"If you have answered Issue No. 4A 'Yes,' then answer the following:

"Issue No. 4B: Was plaintiff Leila Hathaway justified in reasonably relying on Doctor Degnan's apparent authority (as Baldwin Park Women's Clinic) and thus parted with something of value or incurred some liability?

"Answer 'Yes' or 'No.'

"Answer: *'Yes.'*"

### PROCEEDINGS AFTER RECEIPT OF VERDICTS AND FINDINGS

When the bailiff handed him the verdicts and findings, the trial judge, after examining them, asked the bailiff to take the jury back to the jury room. After the jury had left, the trial judge informed counsel of the contents of the verdicts and findings. The question whether the verdicts were inconsistent was discussed. After discussing this matter for several minutes in open court on the record, counsel and the trial judge went into chambers where the discussion was continued with the reporter present.

The judge indicated that in his view the general verdicts and special findings were inconsistent with each other, "insofar as it finds for Doctor Degnan against the plaintiffs when the only factual basis for the joint venture is that Doctor Degnan and the hospital were in a joint venture."

The trial judge said further: "Additionally, in the jury's verdict finding for the hospital and against Frank Hathaway on the loss of consortium, it is inconsistent since Frank Hathaway's action is derivative, and since the jury on the one hand has found the hospital liable as against the plaintiff Leila. It seems inconsistent that they found for the hospital against her husband Frank Hathaway on the loss of consortium issue."

Plaintiffs' counsel then suggested that the problem of inconsistency might be solved if he were to dismiss defendants Hospital and Degnan. The trial judge, while specifically declining to make any statement regarding the propriety of plaintiffs dismissing Hospital and Degnan, did state that, in his view, if such motions were made and granted, there would no longer be inconsistent verdicts.

Plaintiffs' counsel then moved that the case be dismissed as against Degnan. The court inquired: "Is there any objection?" Degnan's attorney replied: "No, no objection." The court then stated: "The motion is granted." A similar motion to dismiss defendant Hospital was made and granted.

The court later stated: "Therefore, the motions are granted. That being the case, as soon as the other juror returns we will reconvene and take the verdicts. I will merely tell the jury that they will be polled and asked questions in regard only to those verdicts, and that they are not to concern themselves in any way with the results of their other proposed verdicts." Subsequently, judgments were entered against Spiro and Velayos in accordance with the verdicts relating to them.

## Issues Presented

In their opening brief, appellants Spiro and Velayos state that the issue to be resolved is as follows: "Did the trial court abuse its discretion in resolving inconsistent general verdicts, including inconsistencies between verdicts against appellants and for codefendants, and inconsistencies between special and general verdicts, by granting plaintiffs' motion to dismiss all defendants except appellants, and by doing so after the jury's inconsistent verdicts had been disclosed to counsel, but before judgment had been entered?"

Before we reach that issue, however, we must determine whether counsel for Spiro and Velayos, by his silence, waived any objection to the dismissal of Hospital and Degnan and its consequences.

## ■ TRIAL COUNSEL FOR APPELLANTS, BY HIS SILENCE, WAIVED ANY OBJECTION TO THE DISMISSAL OF HOSPITAL AND DEGNAN AND ITS CONSEQUENCES.

At the outset, it is important to note that trial counsel for Spiro and Velayos (who is not their counsel on appeal) was present throughout the hearing in the courtroom during which the general verdicts and special findings were received and discussed and the hearing immediately following in chambers where that discussion was continued and the "solution" was proposed and effected. He was present throughout. He was mute. He did not comment concerning the inconsistencies. He made no statement, objection or otherwise, concerning the dismissal of Hospital and Degnan or the receipt of the verdicts against his clients.

A review of the transcript discloses that the trial judge was concerned about the verdicts and findings and was desirous of "talking out the problem" with counsel. What took place was a discussion in which all who were present and desired to do so could participate. When motions to dismiss Hospital and Degnan were made, the judge on two occasions asked if there were any objections. None was made on behalf of appellants nor on behalf of any party.

Appellants cite a number of cases which deal with the problem of ambiguous or inconsistent verdicts. We do not read any of those cases to be factually analogous to the case at bar. No case has been cited to us, nor do we find any, in which, as here, the granting of an unopposed motion to dismiss one or several defendants resulted in the elimination of an inconsistency in verdicts that had been delivered but never read in open court and confirmed by the jury as its verdicts (Code Civ. Proc., § 618) or entered in the minutes of the court (Code Civ. Proc., § 628). Unlike the cases cited by appellants, the verdicts delivered to the court relative to the parties who were dismissed (Degnan and Hospital) form no part of any judgment entered in this case.

In *Brown* v. *Regan* (1938) 10 Cal.2d 519 [75 P.2d 1063], plaintiff, a pedestrian, was struck by a car driven by the son of the car's owner. The jury returned a verdict against the father-owner in the amount of $5,000 and against the son-driver in the amount of "nothing dollars." Judgment was entered accordingly.

Father-owner appealed. The court noted that his attorney "not only did not seek to have the jury returned for further deliberation in an effort to clear up the apparent ambiguity, but vigorously opposed the efforts of the attorney for the plaintiff to secure such clarification of the verdict." (10 Cal.2d at p. 524.)

The trial court acceded to his position and ordered the clerk to file the verdict as rendered. The Supreme Court held that appellant waived the defect in the verdict and was estopped to complain about it on appeal.

Appellants herein rely upon *Remy* v. *Exley Produce Express, Inc.* (1957) 148 Cal.App.2d 550 [307 P.2d 65]. Inconsistent verdicts were received and entered. Appellant's counsel did not call this to the attention of the trial judge or voice any objection to the verdicts before the jury was excused. The Court of Appeal discussed Code of Civil Procedure Section 619[1] and concluded that the verdicts rendered were neither "informal [n]or insufficient, in not covering the issue submitted" but were inconsistent. The court held that there is no requirement that inconsistencies in verdicts be called to the attention of the trial judge.

We believe *Remy* is readily distinguishable. In the instant case before the entry of any verdict or judgment, two defendants were dismissed, thus ren-

---

[1]"When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out." (Code Civ. Proc., § 619.)

dering moot any inconsistencies in the proposed verdicts or special findings relative to them and they were dismissed without any objection by appellants. There is no inconsistency in the verdicts that were read and entered.

In *Woodcock* v. *Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452 [72 Cal.Rptr. 217, 445 P.2d 881], cited by appellants, the jury returned what seemed to be an ambiguous verdict. It was in the amount of $13,000, but a question arose whether this was gross or net of a compensation lien. The trial judge interpreted the verdict in accordance with the instructions he had given. The Supreme Court disagreed with that interpretation and ordered that judgment in a different amount be entered.

The court quoted from *Fernandez* v. *Consolidated Fisheries, Inc.* (1953) 117 Cal.App.2d 254, 263 [255 P.2d 863] as follows: " 'If the verdict is ambiguous the party adversely affected should request a more formal and certain verdict. Then, if the trial judge has any doubts on the subject, he may send the jury out, under proper instructions, to correct the informal or insufficient verdict.' " (69 Cal.2d at p. 456.) The court went on to say that where no objection is made before the jury is discharged, the duty devolves upon the trial judge to interpret the verdict from its language, taking into account the pleadings, evidence and instructions.

The court noted that: "Frequently, failure to object to the form of a verdict before the jury is discharged has been held to be a waiver of any defect. [Citations.] However, waiver is not automatic, and there are many exceptions. [Citations.] [¶] Waiver is not found where the record indicates that the failure to object was not the result of a desire to reap a 'technical advantage' or engage in a 'litigious strategy.' [Citations.]" (69 Cal.2d at p. 456, fn. 2.)

Here again the facts are not analogous to those in the case at bar. The ambiguous verdict in *Woodcock* cannot be compared with the granting of the motion to dismiss the defendants Degnan and Hospital which resulted in no verdict or special finding being received and entered regarding them.[2]

Thus, it appears that the cases relied upon by appellant are not in point. Upon analysis, it becomes clear that the trial judge granted an unopposed motion to dismiss two defendants. Had appellants' counsel objected at the time, the trial judge might have denied the motions to dismiss and sent the verdicts and findings back to the jury for further consideration. Having

---

[2]*Morris* v. *McCauley's Quality Transmission Service* (1976) 60 Cal.App.3d 964 [132 Cal.Rptr. 37] and *Mixon* v. *Riverview Hospital* (1967) 254 Cal.App.2d 364 [62 Cal.Rptr. 379], which are cited by appellants, are similarly distinguishable.

remained silent when the motions to dismiss were made and granted, appellants may not now be heard to complain about those rulings and their consequences. (See, e.g., 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal § 272, p. 4260.)[3] There is no inconsistency in the verdicts that were read and entered since at that time there remained but one defendant.

We express no opinion as to whether a trial judge might properly grant a motion to dismiss in the situation described herein in the face of an objection by a defendant who would remain in the lawsuit. Nor do we suggest what legal ground might be urged as a basis for such an objection. Bearing in mind the strong and salutary public policy favoring the resolution of disputes we anticipate that absent tortious conduct such an objection has a questionable prospect of success.

An ambiguous or inconsistent finding or verdict presents a problem for a trial judge demanding immediate solution. The interests of all involved—the parties, counsel and the court—are advanced by the avoidance of such problems whenever possible. Toward this end we advise that special findings be requested of juries only when there is a compelling need to do so. Absent strong reason to the contrary their use should be discouraged.

The judgment is affirmed.

Spencer, P. J., and Dalsimer, J., concurred.

---

[3]Although we do not state that they were obliged to do so, we note that appellants have not suggested to the trial court or to us any explanation for silence. We do not express an opinion as to the tactic adopted; we consider the facts as they occurred in the framework of this appeal.