[No. F003921. Fifth Dist. June 30, 1986.]

ALL-WEST DESIGN, INC., et al.,
Plaintiffs, Cross-defendants and Appellants, v.
RUSSELL M. BOOZER, Defendant, Cross-complainant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Parts II, III and IV of this opinion are not published because they do not meet the standards for publication contained in California Rules of Court, rules 976(b) and 976.1.

## COUNSEL

Kadison, Pfaelzer, Woodard, Quinn & Rossi and William M. Hensley for Plaintiffs, Cross-defendants and Appellants.

Miles, Sears & Eanni and Donald R. Franson, Jr., for Defendant, Cross-complainant and Respondent.

## OPINION

**WOOLPERT, J.**—In July of 1982, All-West Design, Inc. (All-West) and Randall Myers (Myers) filed a complaint in Fresno County Superior Court requesting injunctive relief against Russell M. Boozer (Boozer). In a second amended cross-complaint, Boozer alleged breach of contract, recovery on common counts, and fraud. Named as cross-defendants were All-West, Myers, Ranmy Corporation (Ranmy), and Leader Furniture Manufacturing, Inc. (Leader). Attorney fees were requested. Cross-defendants answered and a jury trial followed.

The jury made extensive findings pursuant to special verdict forms.[1] We summarize the jury's findings below.

First, an oral contract between Boozer, Myers, Ranmy, and Leader was found, which was breached by Myers, Ranmy, and Leader. As a result of the breach, Boozer suffered damages in the amount agreed upon in the oral contract ($9,350). Myers, Ranmy, and Leader were found to be the liable parties.

Second, the balance due Boozer on a promissory note was found owing by All-West and Leader. The jury fixed the amount due at $55,804 plus interest as specified.

Third, Myers, All-West and Ranmy were found to have concealed or suppressed a material fact which they were under a duty to disclose; Boozer

---

[1]Due to their significance in the discussion which follows, the material portion of the verdict forms have been reproduced and attached as an appendix to this opinion.

was found to have been unaware the fact was concealed and would not have acted had he known the facts. As a result, Boozer suffered $1,625 in damages, for which the named cross-defendants were found liable.

Fourth, Myers was also found to have failed to provide a promised performance and to have intended not to perform when making the promise. Boozer, unaware of the intention not to perform, relied upon the promise and suffered damages as a result. Myers was liable but the damage award was limited to "No Further Damages."

Fifth, Myers and Ranmy were found to have committed oppression, fraud, or malice.

Sixth, punitive damages were awarded against Myers in the amount of $135,000, and against Ranmy in the amount of $40,000.

Findings 7 through 14 concerned the relationship of the cross-defendants.

Leader was found responsible for the debts and obligations of All-West. Leader was also found to be the alter ego of Ranmy and Myers. Ranmy was found to be the alter ego of Leader and Myers. Myers was found to be the alter ego of Ranmy and Leader. Myers was found to be the agent of the other cross-defendants at the time of the occurrence of the events for which he was found responsible.

Judgment was entered in accordance with the verdict. Cross-defendants' motion for new trial and judgment notwithstanding the verdict was denied. They were also ordered to pay Boozer $15,000 in attorney fees. The judgment was later amended on the special verdict to include $16,546.86 in costs and attorney fees for Boozer. Cross-defendants timely appeal.

## INTRODUCTION

Before we recite the facts we make two observations. The case presented the jurors two contradictory points of view concerning the conduct of the parties. Because punitive damages were claimed, opportunities were present for appeals to the emotions and prejudice of the jurors. Having that factual background, we particularly note the reasoned manner counsel and the court conducted the trial. On this appeal, appellate counsel have more than adequately represented their respective interests in the verdict. In the end, however, we are required to keep in mind the fact the jurors found the cross-complainant's version of the events to be the more persuasive.

## THE FACTS

Boozer was owner of All-West, a Fresno-based furniture manufacturing business formerly known as Fresno Furniture Manufacturing (Fresno Furniture). The business was not doing well. Boozer loaned Fresno Furniture $62,000 between 1975 and 1977. A promissory note was issued in 1977 with interest set at 9¼ percent. He received payments on this note until July 1980. At the time of trial the balance was $55,804. In 1981, a "Small Business Association" (SBA) loan was taken out by Fresno Furniture for $150,000. The loan was secured by the company's equipment and a personal guarantee by Boozer. At this time, Boozer also agreed to temporarily suspended installment payments on the $62,000 promissory note pending payment and release of the SBA loan and lien.

In early 1981, Boozer contacted Myers as a source of outside capital and expertise. Myers was owner of Ranmy, which in turn owned all the stock of Leader. An agreement was reached. In consideration for Myers's expertise and a cash payment of one dollar, Boozer sold 51 percent of All-West to Myers. The above agreement was later formalized as a stock purchase. The stock purchase provided Ranmy would assume no liability incurred by All-West prior to the date the stock was transferred. Myers became president of the company at that time. According to Myers, the two agreed that neither he nor Ranmy would assume any liability for the $62,000 note or the SBA loan. Boozer denied this.

All-West continued to fail financially through March of 1982, despite efforts by Myers which included financial input. Boozer testified he was unaware of the financial difficulty in March.

Boozer and Myers had disagreements on operation of the business. The two had discussions about what to do. Myers was considering taking over the business, but wanted Boozer completely out of the picture prior to investing further in the firm. He was also concerned about liens on All-West's equipment which were held by the SBA. The SBA wanted payment on the loan, and Boozer was seeking an extension on the debt.

Late in March 1982, Myers informed Boozer and his son that he was planning to leave All-West in order to concentrate on Leader. He instructed Boozer's son to tell personnel to begin looking for other work. Myers told other employees, and at least one customer, that business was not good. Boozer hoped All-West could continue operation.

In order to keep All-West operating, and to free the equipment from liens for the surviving company, Boozer and Myers orally agreed in early April

to the following: (1) If possible, Boozer would assume the SBA loan from All-West and thereby remove the liens; (2) together the two would attempt to gain release from the SBA; (3) Boozer would become a sales representative for Leader and receive a 2 percent commission; (4) a debt owed All-West by Golden Oak Furniture (owned by Boozer) would be forgiven; and (5) Boozer would be allowed to use an All-West truck. Myers again began to invest new capital in the company.

The SBA was unreceptive to an initial proposal presented in April, in which Myers sought release of the loan in consideration for money he previously loaned the company. The SBA wanted additional cash consideration obtained by payment or a liquidation sale; it also wanted the two parties to agree on disposition of the equipment. The two could not agree on the value of the equipment. Boozer valued it at approximately $30,000, while Myers set the value at $6,000.

On April 12, Myers unilaterally submitted a written cash offer for the equipment to the SBA. Boozer was to assume the SBA loan, and the SBA would release its liens. The proposal valued the equipment at $6,975. Boozer did not agree with the proposal and refused to go along with it. He wrote the SBA informing it he felt Myers was attempting to buy the equipment at a token price.

Myers was also told of Boozer's disagreement with the plan. Boozer wanted the highest possible price for the equipment since it would reduce his obligation to the SBA proportionately. Upon Boozer's request, a liquidation specialist inspected the machinery. Boozer sought, and later received, permission from the SBA to remove the equipment and hold a public sale. On April 30 Boozer gave Myers 21 days notice of intent to remove and sell the equipment.

On May 1, Myers closed the books of All-West; Leader then took over at the same plant using all but one of the All-West employees and all of its equipment. There was no break in production and no bulk transfer notice was made. Boozer was removed as director and vice president of All-West. Not until July was Boozer notified that he was no longer an officer of All-West, learning of this fact by advice on Leader letterhead.

Boozer found a buyer for the equipment who was willing to pay $9,350. The proposal was communicated to the SBA and accepted on May 25. However, Myers did not want the equipment removed. Nevertheless, he purported to agree to the division of the equipment after the two made an inventory. This would satisfy the SBA requirement of both agreeing. A written list of equipment to be sold, and the price fixed, was made.

Undisclosed to Boozer, however, was Myers's intent to keep the equipment once the SBA released it. His plan was to attempt to hold Boozer to his earlier oral agreement in which he purportedly assumed full liability for the SBA loan. On June 23 Myers and Boozer signed a letter asking the SBA to release the equipment in consideration of payment of $9,350. A check for that amount was tendered by Boozer and the SBA released the equipment as collateral securing the loan.

Early in July when Boozer attempted to pick up the equipment, Myers refused to let him have it and asserted two previously undisclosed security interests against it. The first security interest was given by Myers and All-West to Central Bank of Fresno in the form of a $15,000 commercial note dated April 20. The second was given by All-West to Myers on June 9, and was recorded June 28.

On July 9, Myers and All-West filed suit against Boozer, seeking the injunctive relief which was granted. Boozer was prevented from removing the equipment and restrained against making any physical contact with Myers or any of his agents. As a result, Boozer's contemplated sale for $9,350 could not take place. In September, Boozer filed a cross-complaint alleging the June 20 oral agreement was breached, with $9,350 damages resulting. In October, and again in July of 1983, the cross-complaint was amended to state multiple causes of action.

Before Boozer filed his first amended cross-complaint alleging multiple causes of action, including a count on the $62,000 promissory note, Myers commenced foreclosure of his lien against the equipment on October 11, 1982. A private sale was held. Although a "Notice of Private Sale" was issued, Boozer did not receive it. Also, without communication with Boozer, Myers sold the equipment to Ranmy for $10,975. Ranmy, in turn, leased the property to Leader for $2,000 per month.

The figure of $10,975 is important because the jury most certainly used it in determining damages. In oral argument, cross-complainant's counsel sought $2,000 a month for 20 months, or $40,000, as compensatory damages (excluding the sum due on the promissory note). Instead, the jurors apparently treated the sale from Myers to Ranmy as proof of the fair market value of the equipment. Rather than awarding the rental value requested, the jury awarded $9,350 damages for breach of the July 1982 oral agreement, and $1,625 damages for the fraudulent concealment of facts: The total of the two figures is $10,975, the financial detriment to Boozer arising from the conduct of the named cross-defendants. On this appeal Myers challenges this explanation of the special verdict.

Testimony was also presented showing Myers's unilateral action regarding the lease of the business property site. Earlier in April 1982, an All-West lease with Caltrans was terminated prematurely. Without advice to Boozer, a new lease agreement was executed with Leader as lessor, and Caltrans as lessee.

In May 1983, the SBA foreclosed on its loan to Boozer, taking his personal residence and two rental properties. Boozer was released from his guarantee; however, he did not notify All-West of this fact.

Although Leader carried out operations at the old All-West plant and used most of what was once All-West equipment and former All-West employees, it did not formally deal with All-West's creditors. Myers asserted that he did attempt to negotiate with some of the creditors. Further, All-West, as an entity, was never formally "closed out."

## I. Verdict Forms Used

Appellants first argue the special verdict forms were indefinite and allowed the jury to find exemplary damages upon an improper basis. The ambiguity was not cured by the instructions given or by comments from counsel. The court therefore erred in denying appellants' motion for new trial.

 Appellants have not waived the right to challenge the use of the verdict forms by failing to argue against them prior to their submission to the jury. They timely preserved the issue by raising it at their motion for new trial. (*Mixon* v. *Riverview Hospital* (1967) 254 Cal.App.2d 364, 376-377 [62 Cal.Rptr. 379]; *Tri-Delta Engineering, Inc.* v. *Insurance Co. of North America* (1978) 80 Cal.App.3d 752, 758 [146 Cal.Rptr. 14].)

The asserted "ambiguity" begins with "Issue No. 6." The jury was asked to assess punitive damages against each defendant if the jury first answered "yes" to the question posed in "Issue No. 5." The jury awarded punitive damages in an amount of $135,000 against Myers, and $40,000 against Ranmy. However, "Issue No. 5" is a compound question allowing a "yes" answer under alternative theories: The jury was asked if it found cross-defendants guilty of "oppression, fraud, or malice"; however, the acts where oppression, fraud or malice may have occurred are those the jury found committed by cross-defendants in "Issue No. 3," *or* "Issue No. 4."

To paraphrase "Issue No. 3," the jury was asked if the following was true: Plaintiff was damaged because cross-defendant or cross-defendants,

with the intent to defraud, intentionally suppressed a material fact which they had a duty to disclose, and plaintiff was unaware of the fact concealed and would not have acted had he known the concealed or suppressed fact.

Again paraphrasing, "Issue No. 4" asked the jury if the following was true: Plaintiff was damaged because cross-defendant or cross-defendants, with intent to defraud, made a promise as to a material matter while at the same time not intending to perform the promise, and that plaintiff was unaware of the intent not to perform while justifiably acting in reliance upon the promise made.

In "Issue No. 3," the jury answered "yes" and found Myers, Ranmy, and All-West liable for damages in the amount of $1,625, which resulted from the concealment.

In "Issue No. 4," the jury answered "yes" and found Myers liable for damages in an amount of "No Further Damages," resulting from the promise made without an intent to perform.

The concern is that the jury could not, based upon the verdict form, instructions given, and comments by counsel, decide which type of conduct was the proper subject of an award of exemplary damages.

Appellants make a two-prong attack, finding fault with (1) the "leapfrog" approach necessary to track through the verdict forms in order to reach a decision in "Issue No. 6," and (2) lack of guidance on what type of damages should be considered in computation of the award of punitive damages.

Appellate courts differ concerning the use of special verdicts. In one case the court said, "we should utilize opportunities to force counsel into requesting special verdicts." (*McCloud* v. *Roy Riegels Chemicals* (1971) 20 Cal.App.3d 928, 937 [97 Cal.Rptr. 910].) In contrast, a more recent decision included the negative view: "Toward this end we advise that special findings be requested of juries only when there is a compelling need to do so. Absent strong reason to the contrary their use should be discouraged." (*Hathaway* v. *Spiro* (1985) 164 Cal.App.3d 359, 367 [210 Cal.Rptr. 421].) Obviously, it is easier to tell after the fact, rather than before, whether the special verdict is helpful in disclosing the jury conclusions leading to the end result.

We conclude the sequential approach used in this case was not confusing and is much more helpful to our review than if a general verdict form had been used. It is not difficult to track back through the special findings in order to appreciate what exactly the jury did. No authority is

provided for the assertion that additional guidance on computation was required. Both "Issue No. 3" and "Issue No. 4" described an act of conduct (all elements of which had to be found true before the act could be found to have happened) upon which a punitive damage award may be based—concealment or fraud.

In response to "Issue No. 3," the jurors found Myers, All-West and Ranmy had fraudulently concealed facts. In contrast, in response to "Issue No. 4," the jury limited the responsibility, for making a promise with intent not to perform, to the person who admitted having that fraudulent intent: Myers. Although the jurors might have used agency principles to make others likewise responsible for that intent, they did not. Therefore, Myers was found responsible for two kinds of fraud, with higher punitive damages being assessed, and Ranmy, responsible only for fraudulent concealment, was held to smaller punitive damages.

If the use of "or" in "Issue No. 5" had any consequence, it related to Ranmy. Myers was found responsible for *both* types of fraudulent conduct; therefore, as to him the use of "or" was inconsequential. Ranmy, being responsible only for fraudulent concealment ("Issue No. 3"), benefited from the use of "or." The jurors discreetly found one basis for punitive damages, and, having less to fault Ranmy than Myers, assessed smaller punitive damages. Although Ranmy was found to be the alter ego of Myers, Ranmy was not constructively held to making the fraudulent promise. As a result, it is not in a position to complain.

■ Appellants find the verdict ambiguous and incomprehensible because the jury returned a verdict for $1,625 on the concealment charge and "No Further Damages" on the charge of fraud. They argue the award of "No Further Damages" is an award of zero damages. ■ They correctly point out that, generally, punitive damages may not be awarded where no actual damages are found: "'Exemplary or punitive damages are not recoverable as [a] matter of right. Their allowance rests entirely in the discretion of the jury, and they may be awarded only where there is some evidence of fraud, malice, express or implied, or oppression. Such damages are mere incidents to the cause of action and can never constitute the basis thereof. This being so, it is generally held that exemplary damages are not recoverable in the absence of a showing of actual damages." (*Clark* v. *McClurg* (1932) 215 Cal. 279, 282 [9 P.2d 505, 81 A.L.R. 908]; see also *Haydel* v. *Morton* (1935) 8 Cal.App.2d 730, 736 [48 P.2d 709].)

■ The verdict in the present case, however, does not demonstrate the jury expressly found Boozer had not suffered actual damages. The language "No Further Damages" is not equal to "zero" damages. (See *Haydel* v.

*Morton, supra,* 8 Cal.App.2d at p. 737.) The language by the jury is an *implicit finding of actual damages* for which no further monetary award was made. We conclude the jury was of the opinion the full actual damages suffered had been awarded under earlier issues found to be true. As a result, the jury was attempting to prevent double recovery.

In *Clark* v. *McClurg, supra,* 215 Cal. 279, an award of punitive damages was upheld in which the jury returned a verdict as follows: "'We, the jury in the above-entitled action, find for the plaintiff and assess her damages in the sum of ...... ($......) Dollars as actual damages and the sum of Five Thousand ($5,000.00) Dollars as punitive damages, making a total of Five Thousand ($5,000.00) Dollars, this 20th day of September, 1928.'" (*Id.,* at p. 281.) Because of the nature of the action, the court presumed actual damages of some kind and found the verdict to be erroneous only in form and not in substance. Notably, the jury had not made an express finding of no actual damages, as would have been the case if $00 had been inserted in the form, the situation in the *Haydel* case.

"A verdict should be interpreted so as to uphold it and to give it the effect intended by the jury, as well as one consistent with the law and the evidence." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 343, p. 343.) Thus, in *Shell* v. *Schmidt* (1954) 126 Cal.App.2d 279 [272 P.2d 82], plaintiffs complained that certain houses were not built according to plans and specifications. The suit was brought on contract and tort theories. Each plaintiff sought damages which would place the home in the condition promised. This would require $4,800. "This sum was sought either on the theory of breach of contract or fraud, or both. But no matter how many theories of recovery were stated or proved, respondents were entitled to but one recovery which could not exceed $4,800. Double recovery could not be secured lawfully for the same identical violations of the plans and specifications." (*Id.,* at p. 291.)

In the *Shell* case, because of the number of plaintiffs and confusing instructions and directions, it was not possible to make sense of the verdicts. The court did note: "Conceivably, the error would not have been prejudicial if both theories found by the jury were sustainable by the record." (*Id.,* at p. 294.) In our case the special verdict form made the jurors' intent clear. Likewise, there is substantial evidence to support both theories.

Since the jury was limited by "ISSUE No. 5" to awarding punitive damages only for acts taking place in "ISSUE No. 3" or "ISSUE No. 4," and they awarded those damages, appellants' argument that the "No Further Damages" stated in "ISSUE No. 4" may have referred to the award in one of the other "non-tort" claims, must fail. Such a result could only be found

by interpreting the verdicts inconsistently with what the jury was instructed to do. Therefore, we find the special verdict form submitted to the jury contained a logical series of questions designed to ascertain how and to what extent the cross-defendants, or any of them, damaged the cross-complainant.

Only "ISSUE No. 2" concerning the promissory note was out of place. Disregarding that issue for this purpose, as the jurors would also have done, "ISSUE No. 1" was resolved by finding a July 1982 oral agreement was breached (a contract finding). Acting contrary to that agreement, Myers, All-West and Ranmy concealed facts relating to the equipment (the subject of the agreement) which resulted in similar damage. That is, on the contract theory, the agreed price of $9,350 was found to be the loss, and on the fraudulent concealment theory, the additional loss was found to be $1,625. The two figures represented the fair market value of the equipment when Myers sold it (i.e., by his own admission, $10,375).

The jury clearly thought the recovery due to the loss of the equipment should be its value for the purpose for which Boozer sought it: a sale at market value. If the jury had found $9,350 damages and then another sum such as $10,375, appellants would have complained of a double recovery. Logically, the jury answered "ISSUE No. 3" by adding the balance to make one full recovery.

When the jurors reached "ISSUE No. 4" it was only consistent to recite "No Further Damages" as the full amount had been reported previously. Appellants' argument in this respect is strained and disregards the obvious intent of the jury. Clearly, "plaintiff (cross-complainant)" had but one primary right which was expressed in contract and tort counts. In the eyes of the law he had but one cause of action.

No additional instructions, either in the verdict forms, by the court, or by counsel, were necessary on the question of the type of damages upon which an award of punitive damages could be based. The forms themselves were self-explanatory. "ISSUE No. 6" instructed the jury to look back to "ISSUE No. 5." "ISSUE No. 5" asked only if cross-defendants were guilty of oppression, fraud, or malice in committing the acts of concealment or fraud, as defined in "ISSUE No. 3" and "ISSUE No. 4." The jury was therefore limited to awarding punitive damages to those types of damage awards upon which punitive damages may be based. Pertinent instructions by the court and comments by counsel added virtually nothing to the verdict forms in this regard. No confusion was caused by these comments or instructions.

Further, while it is true, as a general rule, punitive damages are not recoverable in an action based on a contractual obligation (despite willful,

fraudulent, or malicious breach) (Civ. Code, § 3294), under the present facts a separate tort action was alleged which *incidentally* involved a breach of contract. (*Haigler* v. *Donnelly* (1941) 18 Cal.2d 674, 680 [117 P.2d 331]; Johns, Cal. Damages Law and Proof (2d ed. 1979) Punitive or Exemplary Damages, § 18.2, pp. 392-393.) If there had been but one verdict based upon contract, punitive damages would have been improper. However, in this case the jurors found on both contractual and tort theories, with total compensatory damages being in excess of the agreed price. Having found on the tort theories of recovery, cross-complainant's loss for tort purposes must be the sum which would have been found if the issues had been asked in reverse order, $10,375.

### II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . .

## V. THE AWARD OF ATTORNEY FEES

The court awarded Boozer $15,000 in attorney fees. Appellants first argue the award of these fees could only have been based upon the attorney fees paragraph in the promissory note between Boozer and Fresno Furniture (All-West), upon which Leader was found to have assumed indebtedness. Appellants argue the court erred since no demand was made on the note prior to Boozer filing his cross-complaint, and that California law requires such a demand prior to initiation of litigation. Attorney fees were not demanded until the cross-complaint was amended. The promissory note provides that demand of payment in full may be made upon default.

Appellants cite *Green* v. *Carlstrom* (1963) 212 Cal.App.2d 240, 243-244 [27 Cal.Rptr. 850], for the proposition a formal demand on the note must be made prior to initiation of litigation in order to claim attorney fees under a promissory note: "The option to accelerate a promissory note does not operate automatically but some act is required to effect such acceleration. [Citation.] [¶] It is true that the election to accelerate a note may be evidenced by the commencement of an action thereon. [Citation.] Where, however, the plaintiff seeks to recover counsel fees, it becomes necessary to make a demand prior to the commencement of the action. Although it is true that it is ordinarily not necessary to present a note for payment in order to charge the original debtor, nevertheless, a demand for payment must be made in order to justify allowance of attorney's fees. [Citation.]"

*See footnote, *ante,* p. 1212.

*Green* has been cited once in its over 20-year history, and not for this proposition. It is submitted that, at most, *Green* stands for the proposition attorney fees cannot be collected in such a case if the other party to the note prevails or does not oppose collection. For example, if a party not receiving a "pre-action" demand did not oppose collection, no fees on the complaint could be awarded, and rightfully so. If, on the other hand, the party not receiving "pre-action" demand prevailed, under the note that party would receive fees rather than the party failing to make demand. Both results are consistent with the Civil Code. (Civ. Code, § 1717, subds. (b)(1) and (b)(2).)

■ We agree that in the usual case suit may be filed on a demand note without making a demand, but if attorney fees are to be claimed, a demand must be made prior to suit. The reason for this rule relates to the intention of the parties to the note. The maker of a demand note does not anticipate a sum for attorney fees will be added to the principal sum, absent a refusal to pay. If a contrary rule were to apply, the maker would sign no such note because it would allow a demand and claim for attorney fees on the following day. Thus, demand (and a failure to pay) is required to give effect to the implied intent. (*Prescott* v. *Grady* (1891) 91 Cal. 518 [27 P. 755].) The same reasoning does not apply when the promisee initiates the litigation. In that instance, mutual demands must be litigated.

We need not recite again the activities of Myers preceding the filing of the first amended cross-complaint which asserted the right to attorney fees. In fact, we note that without apparent legal basis Myers demanded attorney fees when he filed the first complaint. No error occurred.

## VI. THE AMOUNT OF ATTORNEY FEES

■ In their final argument, appellants assert the court erred in awarding Boozer $15,000 in attorney fees because the only action for which fees were recoverable was the breach of contract action on the promissory note. Appellants argue the $15,000 figure was arrived at by the court when counsel for Boozer informed the court that no time record was made in the course of preparation and trial, but that he spent a *minimum* of 200 hours on the case. Since counsel stated the hourly rate he would charge in such a case would have been $75 per hour, a charge for 200 hours of work would result in a bill for $15,000. As a result appellants take the position the court erred by awarding fees for counsel's time on the entire case.

Fees are not collectable on the tort actions. (*Stout* v. *Turney* (1970) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228]; Civ. Code, § 1717.) Recovery of fees cannot be increased by joining a cause of action upon

which attorney's fees may not be collected with one where fees are allowable. (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83].)

Boozer retained counsel on a contingency fee basis. According to counsel, he was to be paid one-third of the net proceeds if the case proceeded to trial. He therefore argues that $15,000 is within the range of one-third of the damages awarded on the promissory note: $55,804 in principal plus $3,464 in interest. And while counsel for Boozer cannot escape his own declaration to the court in which he stated he spent a minimum of 200 hours in preparation and trial of the action, and would ordinarily charge $75 per hour for handling such a case on an hourly basis, he can successfully argue that this figure was given to the court only as a means of showing a contingency fee in the same amount would be reasonable. The actual contingent fee would have been higher, assuming no offset credits.

When awarding fees under the note, it was unnecessary the court award *exactly* the one-third rate to which Boozer and his attorney agreed. The court's decision must be based upon reasonableness. (Civ. Code, § 1717, subd. (a).) The court may well have believed that in order to prove breach on the promissory note, counsel for Boozer had to prepare to be successful on all causes of action. Further, the court likely considered the fact that counsel stated exact hours were not kept and that the 200-hour figure represented the *minimum* time spent.

We will presume the trial court was entirely familiar with the rules relating to attorney fee awards. It would be error to consider only the hours spent in preparing and trying the case. Many other factors enter into the determination. (*Boller* v. *Signal Oil & Gas Co.* (1964) 230 Cal.App.2d 648 [41 Cal.Rptr. 206].) As a result, we can find no abuse of discretion.

Pursuant to our authority to modify judgments, we will affirm the judgment subject to its reduction in the amount of $12,500. This reduction represents an admitted credit due appellants All-West and Leader in connection with the verdict on the promissory note. The sum found due plaintiff by the judgment, at page 8 thereof, and continuing over to page 9, is therefore modified to add to line 3, page 9, the following: "Against said sums there shall be a credit of $12,500."

As modified, the judgment is affirmed. Neither side being entirely successful on this appeal, no costs on appeal are awarded.

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 17, 1986.

## APPENDIX A

We, the jury in the above-entitled case, find the following Special Verdict on the issues submitted to us:

ISSUE NO. 1: Are all of the following true:

That plaintiff and defendants, or any of them, entered into an oral agreement to release and divide equipment in consideration of $9,350.00;

That plaintiff BOOZER performed his duties under this agreement;

That defendants, or any of them, breached their duties under this contract; and

That plaintiff BOOZER suffered damages as a result of this breach.

Answer "yes" or "no."

ANSWER: _yes_

If your answer to Issue No. 1 is yes, please state the date that this breach occurred on, and the amount of damages suffered by plaintiff BOOZER.

Date: _July 1982_

Damages are as follows: _$9,350.00_

If your answer to Issue No. 1 is yes, please state which defendant, or defendants, you find liable for such breach and damages.

Name of each such defendant:

_Randall L. Myers_
_Ranmy Corp._
_Leader Furniture Manufacturing, Inc._
_dba Leader of California_

ISSUE NO. 2: Are all of the following true:

That plaintiff BOOZER and the defendants, or any of them, entered into a written agreement, evidenced by a promissory note in favor of Russell M. Boozer, in a sum of $62,000.00;

That plaintiff BOOZER has performed his duties under this agreement;

That defendants breach their duties under this agreement; and

That plaintiff BOOZER has suffered damages as a result of defendants breach.

Answer "yes" or "no."

ANSWER: _yes_

If your answer to Issue No. 2 is yes, please state the date that this breach occurred on, and the amount of damages suffered by plaintiff BOOZER.

Date: _June 1, 1983_

Damages are as follows: _$55,804.00 + interest from 6/1/83 per original promissory note_

If your answer to Issue No. 2 is yes, please state which defendant, or defendants, you find liable for such breach and damages.

Name of each such defendant:

_All-West Design Inc._
_Leader Furniture Manufacturing, Inc. dba Leader of Cali_

ISSUE NO. 3: Are all of the following true:

That defendants, or one or more of them, concealed or suppressed a material fact;

That they were under a duty to disclose the fact to the plaintiff;

That they intentionally concealed or suppressed the fact with the intent to defraud plaintiff;

That plaintiff was unaware of the fact concealed and would not have acted as he did if he had known of the concealed or suppressed fact; and

That as a result of defendant's, or defendants', concealment, plaintiff suffered damages.

Answer "yes" or "no."

ANSWER: _yes_

If your answer to Issue No. 3 is yes, what is the total amount of damages suffered by the plaintiff as a proximate result of the concealment or suppression of the fact?

Damages are as follows: $ 1,625.00

If your answer to Issue No. 3 is yes, which defendant, or defendants, do you find liable for such concealment.

Name of each such defendant:

Randall L. Myers

Ranmy Corp.

All-West Design, Inc.

ISSUE NO. 4: Are all of the following true:

That defendants, or one or more of them, made a promise as to a material matter which they intended not to perform;

That they made this promise with the intent to defraud plaintiff;

That the plaintiff was unaware of defendants' intention not to perform;

That the plaintiff acted in reliance upon the promise and was justified in relying upon the promises made by the defendant; and

That the plaintiff was damaged as a result of his reliance upon the promise.

Answer "yes" or "no."

ANSWER: _____yes_____

If you have answered Issue No. 4 yes, what is the total amount of damages suffered by the plaintiff as a proximate result of his reliance upon the promise?

Damages are as follows: _No Further Damages_

If your answer to Issue No. 4 is yes, which defendant, or defendants, do you find liable for such promise without intent to perform?

Name each such defendant:

_Randall L. Myers_

_____

_____

_____

ISSUE NO. 5: If you answered either Issue No. 3 or Issue No. 4 yes, then answer:

Were defendants, or any of them, guilty of oppression, fraud, or malice in doing the acts listed in such issues as to which you have answered "yes?"

Answer "yes" or "no."

ANSWER: _____yes_____

If you have answered Issue No. 5 yes, which defendant, or defendants, do you find to be guilty of oppression, fraud, or malice?

Name each such defendant:

Randall L. Myers

Ranmy Corp.

_____

_____

ISSUE NO. 6: If you have answered Issue No. 5 yes, what amount of punitive damages, if any, do you assess against each of the defendants named in your answer to Issue No. 5 for sake of example and by way of punishment.

| Name each such defendant: | Amount of Punitive Damages: |
| --- | --- |
| Randall L. Myers | $135,000.00 |
| Ranmy Corp. | $40,000.00 |
| | |
| | |

ISSUE NO. 7: Is Leader Furniture Manufacturing, Inc., responsible for the corporate debts or obligations of All-West Design, Inc., as the transferee or successor to All-West Design, Inc.?

Answer "yes" or "no."

ANSWER: yes

ISSUE NO. 8: Was Leader Furniture Manufacturing, Inc., the alter ego of Ranmy Corp.?

Answer "yes" or "no."

ANSWER: yes.

ISSUE NO. 9: Was Leader Furniture Manufacturing, Inc., the alter ego of Randall L. Myers?

Answer "yes" or "no."

ANSWER: _yeS_

ISSUE NO. 10: Was Ranmy Corp. the alter ego of Leader Furniture Manufacturing, Inc.?

Answer "yes" or "no."

ANSWER: _yeS_

ISSUE NO. 11: Was Ranmy Corp. the alter ego of Randall L. Myers?

Answer "yes" or "no."

ANSWER: _yeS_ .

ISSUE NO. 12: Was Randall L. Myers the alter ego of Ranmy Corp.?

Answer "yes" or "no."

ANSWER: _yeS_

ISSUE NO 13: Was Randall L. Myers the alter ego of Leader Furniture Manufacturing, Inc.?

Answer "yes" or "no."

ANSWER: _yeS_

ISSUE NO. 14: Was Randall L. Myers the agent of the remaining defendants at the time of the events upon which you find him responsible?

Answer "yes" or "no."

ANSWER: _yeS_

DATED: _1-30-84_