95 Cal.Rptr.2d 198 (2000)
22 Cal.4th 1084
997 P.2d 511
PLCM GROUP, Inc., Plaintiff and Respondent,
v.
David DREXLER, Defendant, Cross-complainant and Appellant;
Dearborn Insurance Company et al., Cross-defendants and Respondents.
No. S080201.
Supreme Court of California.
May 8, 2000.
As Modified June 2, 2000.
*200 David Drexler, in pro. per.; Hart & Watters and Thomas L. Watters for Defendant, Cross-complainant and Appellant.
Shand S. Stephens and Laurie J. Falik, San Francisco, for Plaintiff and Respondent and for Cross-defendants and Respondents Dearborn Insurance Company and Anglo-American Insurance, Ltd.
Wilson, Elser, Moskovitz, Edelman & Dicker, Patrick M. Kelly, Martin K. Deniston and Jonathan C. Balfus, Los Angeles, for Cross-defendant and Respondent Assicurazioni Generali, S.P.A.
Benjamin C. Sybesma and Joel H. Levinson, West Sacramento, for California Correctional Peace Officers Association as Amicus Curiae on behalf of Plaintiff and Respondent.
Eric B. Simon, Santa Rosa, for California International Chemical Company, Inc., as Amicus Curiae on behalf of Plaintiff and Respondent.
James R. Edwards, Aurora, IL, Steven Alan Bennett, Columbus, OH, John H. McGuckin, Jr., San Francisco, and Susan J. Hackett, Washington, DC, for American Corporate Counsel Association as Amicus Curiae on behalf of Plaintiff and Respondent and Cross-defendants and Respondents.
Richard A. Rothschild and Lauren Saunders, Los Angeles, for Western Center on Law and Poverty and Bet Tzedek Legal Services as Amici Curiae.
Horvitz & Levy, Barry R. Levy, Daniel J. Gonzalez, Encino, Jon B. Eisenberg, Oakland; and Carole Runcie Sherman, Calabasas, for the Los Angeles County Bar Association as Amicus Curiae. *199
*201 MOSK, J.
We granted review in this matter to address the question whether an entity that is represented by in-house counsel may recover attorney fees under Civil Code section 1717. As will appear, the answer is yes. Like private counsel, in-house counsel stand in an attorney-client relationship with the corporation and provide comparable legal services. In the case of such representation, the trial court retains broad discretion under Civil Code section 1717 to fix an award of attorney fees in a reasonable amount. Accordingly, we affirm the judgment of the Court of Appeal.

I
Defendant David Drexler, an attorney, was insured under a professional malpractice insurance policy through the Los Angeles County Bar Association. The liability carriers were Dearborn Insurance Company, Anglo-American Insurance, Ltd., and Generali S.P.A. London Branch (hereafter the insurers). PLCM Group, Inc. (hereafter PLCM), administered the insurance program and processed the claims. The policy provided for a deductible of $20,000 per claim for both indemnity and expense payments. It contained a deductible-reimbursement and attorney fee provision (hereafter the reimbursement provision) as follows. "The deductible shall be paid by the Named Insured upon demand by the [insurance companies] to the persons or entities designated by the [insurance companies]. The [insurance companies] shall have the right ... to advance sums on behalf of the Named Insured within the applicable deductible. If the Insured fails, after demand, to reimburse the [insurance companies] for any amounts within the deductible which the [insurance companies have] advanced, the [insurance companies] may bring suit to recover such amounts and shall also be entitled to recover interest from the date of demand, and attorneys' fees and costs incurred in bringing the action."
In January 1991, Drexler was sued for professional malpractice. He tendered his claim to PLCM, which retained the law firm he selected, Haight, Brown & Bonesteel (hereafter Haight, Brown) to defend him. PLCM reviewed the bills from the law firm and found them to be appropriate. By the time the lawsuit was settled in November 1991, Drexler had paid $9,680 in defense fees. In December 1991, Haight, Brown sent him a bill for the balance of fees in the amount of $10,319.62. Drexler did not pay any portion of the bill.
In March 1992, PLCM sent a letter to Drexler reviewing the amount owing to Haight, Brown and quoting the policy language regarding his obligation to satisfy the deductible. Drexler responded that he was in the process of discussing his "concern over the matter" with Haight, Brown. In April and June 1993, Haight, Brown firm sent outstanding bill statements to PLCM reporting that the deductible had not been paid.
In October 1993, PLCM invoked the reimbursement provision, paid Haight, Brown the outstanding amount, and demanded reimbursement from Drexler. Drexler responded that he did not "owe anything" to PLCM or to Haight, Brown, and cautioned PLCM against taking any action against him. In a second letter to PLCM, he reiterated his refusal, stating that the payment to Haight, Brown "was voluntary and unauthorized" and was "made as an attempt to prejudice and undercut my rights to dispute [the law firm's] entitlement to the claimed fee."
In February 1994, PLCM assigned the claims to a collection firm, which filed an action for breach of contract in municipal court. Drexler cross-complained against PLCM and the insurers, alleging breach of contract, insurance bad faith, and intentional infliction of emotional distress. Drexler's cross-complaint sought damages, including general, special, and punitive damages, exceeding the jurisdictional limit of the municipal court; he moved to transfer *202 the case to the superior court. After his motion to transfer the case was granted, the claim was reassigned to PLCM, which was substituted in as plaintiff. Drexler engaged in extensive discovery and motion practice and refused all attempts at settlement. PLCM and the insurers successfully moved for summary judgment on the cross-complaint. In response to an offer by PLCM to accept judgment pursuant to Code of Civil Procedure section 998, Drexler stated that he was "not interested"; he was "willing to spend whatever amount of time and money it takes to see this matter through to conclusion" and threatened "[u]pon the successful defense of this matter, [to] sue you and your principals for malicious prosecution."
Trial commenced in January 1997. Drexler appeared in propria persona; PLCM was represented by in-house counsel employed by its parent company, Aon Corporation. PLCM is charged annually, on a prospective basis, by Aon Corporation for a proportional share of the expenses of operating the law division, the functional equivalent of a retainer: the charge is not based on the actual costs of representation in any particular matter. The jury returned a verdict in favor of PLCM for the full amount of $10,319.62. PLCM and the insurers sought a fee award of $61,050 under the reimbursement provision, based on the total attorney hours expended at the prevailing market rate of $185 per hour for attorneys of comparable experience. The fee motion included a detailed reconstruction by in-house counsel of time records for all activities performed. Drexler moved to tax costs, on the ground, inter alia, that attorney fees for in-house counsel could not be recovered. The superior court entered judgment including an award of attorney fees to PLCM in the requested amount.
Drexler, in propria persona, appealed the order awarding attorney fees. He contended that under Trope v. Katz (1995) 11 Cal.4th 274, 45 Cal.Rptr.2d 241, 902 P.2d 259, PLCM was entitled to no attorney fees for the work of in-house counsel, or, at most, to fees in an amount not exceeding in-house counsel's actual salary. Rejecting the claim, the Court of Appeal affirmed. It held that Civil Code section 1717 permits an award of attorney fees for in-house counsel. It also concluded that the fee award was properly calculated with reference to the prevailing market rate in the community for similar work and was supported by substantial evidence. It rejected a salary plus cost approach on the basis that it could lead to complicated, collateral litigation and determined that a reasonable fee should be based on an objective standard of reasonableness, i.e., the market value of services rendered, "not on some notion of `cost' incurred...."
We granted review; we now affirm.

II
Civil Code section 1717, subdivision (a), provides in relevant part as follows: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] ... [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit."
Civil Code section 1717 was originally enacted to establish mutuality of remedy when a contract makes recovery of attorney fees available only for one party and to prevent the oppressive use of one-sided attorney fees provisions. (Hsu v. Abbara (1995) 9 Cal.4th 863, 870, 39 Cal.Rptr.2d 824, 891 P.2d 804.) Under its provisions, "equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction." (International Industries, *203 Inc. v. Olen (1978) 21 Cal.3d 218, 224, 145 Cal.Rptr. 691, 577 P.2d 1031.) The provision was "designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees incurred in litigation in the event they prevail." (Coast Bank v. Holmes (1971) 19 Cal.App.3d 581, 597, fn. 3, 97 Cal.Rptr. 30; see also Legis. Counsel, Enrolled Bill Mem. on Assem. Bill No. 563 (1968 Reg. Sess.) prepared for Governor Reagan (June 5, 1968) p. 1 ["The bill is intended to protect persons of limited means who sign contracts with those in a superior bargaining position."].)
As subsequently amended in 1981, Civil Code Section 1717 applies equally to reciprocal attorney fee provisions. (Santisas v. Goodin (1998) 17 Cal.4th 599, 614, 71 Cal.Rptr.2d 830, 951 P.2d 399.) It was also amended to state that reasonable attorney fees are to be fixed by the court, and are an element of the costs of the suit. (Stats.1981, ch. 888, § 1, p. 3399.) As explained in Sears v. Baccaglio (1998) 60 Cal.App.4th 1136, 1145, 70 Cal.Rptr.2d 769, the background materials that appear in the legislative history of the 1981 amendment observe that Civil Code section 1717 "creat[ed] a bilateral contractual obligation where a unilateral fee provision previously existed" and that "thereafter attorney's fees were to be seen as allowed by statute, rather than by contract." The history of the statute "consistently adheres to the theme of equity in the award of fees and demonstrates legislative intent to expand the original ambit of the statute by the addition of provisions allowing the court to determine ... the reasonableness of the fees to be awarded." (Sears v. Baccaglio, supra, at pp. 1150-1151, 70 Cal.Rptr.2d 769.) As we explained in Santisas, the statute as amended reflects the legislative purpose "to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions and to eliminate distinctions based on whether recovery was authorized by statute or by contract." (Santisas v. Goodin, supra, 17 Cal.4th at p. 616, 71 Cal.Rptr.2d 830, 951 P.2d 399; see also Trope v. Katz, supra, 11 Cal.4th at p. 289, 45 Cal.Rptr.2d 241, 902 P.2d 259 [the legislative purpose underlying Civil Code section 1717 "is to ensure that contractual attorney fee provisions are enforced evenhandedly"].)

A
The Court of Appeal concluded that the superior court had authority under Civil Code section 1717 to award attorney fees to in-house counsel. We agree.
In Trope v. Katz, supra, 11 Cal.4th 274, 45 Cal.Rptr.2d 241, 902 P.2d 259, we considered whether an attorney who chooses to litigate in propria persona rather than retain an attorney to represent him in an action to enforce a contract containing an attorney fee provision can recover attorney fees under Civil Code section 1717. We answered the question in the negative. We explained that, by definition, the term "attorney fees" implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer. (11 Cal.4th at p. 280, 45 Cal.Rptr.2d 241, 902 P.2d 259; see Kay v. Ehrler (1991) 499 U.S. 432, 435-436, 111 S.Ct. 1435, 113 L.Ed.2d 486 ["the word `attorney' assumes an agency relationship"].)
Nor can an attorney acting in propria persona receive compensation from his opponent "simply because the time he devotes to litigating a matter on his own behalf has value." (Trope v. Katz, supra, 11 Cal.4th at p. 285, 45 Cal.Rptr.2d 241, 902 P.2d 259.) Such an award would constitute disparate treatment, inimical to a statute designed to establish mutuality of remedy: "If an attorney who is the prevailing party in an action to enforce a contract with an attorney fee provision can recover compensation for the time he expends litigating his case in propria persona, but a nonattorney pro se litigant cannot *204 do so regardless of the personal and economic value of such time simply because he has chosen to pursue a different occupation, every such contract would be oppressive and one-sided." (Id. at pp. 285-286, 45 Cal.Rptr.2d 241, 902 P.2d 259.) We pointed out that the ordinary meaning of the phrase "attorney's fees" is the consideration that a litigant actually pays or becomes liable to pay for legal representation, and observed that an attorney litigating in propria persona pays no such compensation. (Id. at p. 280, 45 Cal.Rptr.2d 241, 902 P.2d 259.) We concluded that an attorney acting in propria persona should not be entitled to lost opportunity costs, as the equivalent of such incurred liability. (Id. at p. 285, 45 Cal.Rptr.2d 241, 902 P.2d 259.)
We rejected the argument that the Legislature wished to facilitate or encourage self-representation by attorney litigants. We cited the United States Supreme Court decision in Kay v. Ehrler, supra, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486, which observed that a lawmaking body may instead prefer to discourage pro se representation because it may often conflict with the general public and legislative policy favoring the effective and successful prosecution of meritorious claims. (Trope v. Katz, supra, 11 Cal.4th at p. 292, 45 Cal.Rptr.2d 241, 902 P.2d 259.) "`Even a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a witness. He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom. The adage that "a lawyer who represents himself has a fool for a client" is the product of years of experience by seasoned litigators.'" (Ibid., quoting Kay v. Ehrler, supra, 499 U.S. at pp. 437-438, 111 S.Ct. 1435.) We expressly declined to address the question, not raised in Trope, whether in-house counsel fees could be recovered under the statute, stressing that "nothing in our opinion should be read as endorsing or precluding such an award." (Trope v. Katz, supra, 11 Cal.4th at p. 291, 45 Cal. Rptr.2d 241, 902 P.2d 259.)
None of the foregoing considerations apply in the case of in-house counsel. There is no problem of disparate treatment; in-house attorneys, like private counsel but unlike pro se litigants, do not represent their own personal interests and are not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer. A corporation represented by in-house counsel is in an agency relationship, i.e., it has hired an attorney to provide professional legal services on its behalf. Nor is there any impediment to the effective and successful prosecution of meritorious claims because of possible ethical conflict or emotional investment in the outcome. The fact that in-house counsel is employed by the corporation does not alter the fact of representation by an independent third party. Instead, the payment of a salary to in-house attorneys is analogous to hiring a private firm on a retainer.[1]
In Garfield Bank v. Folb (1994) 25 Cal. App.4th 1804, 31 Cal.Rptr.2d 239, the Court of Appeal held that the trial court properly awarded reasonable attorney fees *205 to the prevailing party under Civil Code section 1717 for the services of in-house counsel. It determined that an award of such fees is consistent with the "overall concern of Civil Code section 1717 ... that [an] award of attorney fees be reciprocal and reasonable." (25 Cal.App.4th at p. 1809, 31 Cal.Rptr.2d 239.) It concluded that denying such fees would violate that principle by discriminating unfairly between in-house and private counsel performing the same services. "Because disallowing fees for in-house counsel would provide a windfall for appellant" the Court of Appeal could see no reason to distinguish between in-house and private counsel. (Ibid.)[2]
Similarly, although the federal courts have denied fees to pro se litigants, they have, under the same statutes granted attorney fees to in-house counsel. (Compare, e.g., Kay v. Ehrler, supra, 499 U.S. at p. 435, 111 S.Ct. 1435 [denying attorney fees to pro se litigant who was an attorney, under 42 U.S.C. § 1988] with Perez v. Velez (S.D.N.Y.1985) 629 F.Supp. 734, 737-738 [awarding fees to corporate counsel, under 42 U.S.C. § 1988]; see also, e.g., Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N.Y. (3d Cir.1960) 281 F.2d 538, 542 ["There is no reason in law or in equity why the insurer should benefit from [the insured's] choice to proceed with some of the work through its own legal department."].) Drawing a distinction that also applies to the case of a corporate litigant, the Supreme Court in Kay v. Ehrler, supra, 499 U.S. at page 436, footnote 7, 111 S.Ct. 1435, distinguished an individual attorney acting in propria persona from an organization receiving a fee award: "[A]n organization is not comparable to a pro se litigant because the organization is always represented by counsel, whether in-house or pro bono, and thus, there is always an attorney-client relationship."
The reasoning in Garfield Bank v. Folb, supra, 25 Cal.App.4th 1804, 31 Cal. Rptr.2d 239, and the federal cases is persuasive. We discern no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer. Both are bound by the same fiduciary and ethical duties to their clients. (See General Dynamics v. Superior Court (1994) 7 Cal.4th 1164, 1190, 32 Cal.Rptr.2d 1, 876 P.2d 487.) Both are qualified to provide, and do provide, equivalent legal services. And both incur attorney fees and costs within the' meaning of Civil Code section 1717 in enforcing the contract on behalf of their client.[3]

B
The superior court calculated the attorney fees to be awarded PLCM based on their market value, specifically, the reasonable in-house attorney hours multiplied by the prevailing hourly rate in the community for comparable legal services. The Court of Appeal affirmed. We agree that the award constituted reasonable attorney fees.
Civil Code section 1717 provides that "[reasonable attorney's fees shall be fixed by the court." As discussed, this requirement reflects the legislative purpose "to establish uniform treatment of fee *206 recoveries in actions on contracts containing attorney fee provisions." (Santisas v. Goodin, supra, 17 Cal.4th at p. 616, 71 Cal.Rptr.2d 830, 951 P.2d 399.) Consistent with that purpose, the trial court has broad authority to determine the amount of a reasonable fee. (International Industries, Inc. v. Olen, supra, 21 Cal.3d at p. 224, 145 Cal.Rptr. 691, 577 P.2d 1031 ["[E]quitable considerations [under Civil Code section 1717] must prevail over ... the technical rules of contractual construction."]; Beverly Hills Properties v. Marcolino (1990) 270 Cal.Rptr. 605, 221 Cal. App.3d Supp. 7, 12 ["the award of attorney fees under section 1717, as its purposes indicate, is governed by equitable principles"]; Montgomery v. Bio-Med Specialties, Inc. (1986) 183 Cal.App.3d 1292, 1297, 228 Cal.Rptr. 709 [trial court has "wide latitude in determining the amount of an award of attorney's fees" under Civil Code section 1717]; Vella v. Hudgins (1984) 151 Cal.App.3d 515, 522, 198 Cal.Rptr. 725 ["The amount to be awarded in attorney's fees is left to the sound discretion of the trial court."].) As we have explained: "The `experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"  meaning that it abused its discretion. (Serrano v. Priest (1977) 20 Cal.3d 25, 49, 141 Cal.Rptr. 315, 569 P.2d 1303; Fed-Mart Corp. v. Pell Enterprises, Inc. (1980) 111 Cal.App.3d 215, 228, 168 Cal.Rptr. 525 [an appellate court will interfere with a determination of reasonable attorney fees "only where there has been a manifest abuse of discretion"].)
As the Court of Appeal herein observed, the fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." (Margolin v. Regional Planning Com. (1982) 134 Cal.App.3d 999, 1004-1005, 185 Cal.Rptr. 145.) The reasonable hourly rate is that prevailing in the community for similar work. (Id. at p. 1004, 185 Cal.Rptr. 145; Shaffer v. Superior Court (1995) 33 Cal.App.4th 993, 1002, 39 Cal.Rptr.2d 506.) The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. (Serrano v. Priest, supra, 20 Cal.3d at p. 49, 141 Cal. Rptr. 315, 569 P.2d 1303.) Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary. (Id. at p. 48, fn. 23, 141 Cal.Rptr. 315, 569 P.2d 1303.)
Thus, applying the lodestar approach to the determination of an award under Civil Code section 1717, the Court of Appeal in Sternwest Corp. v. Ash (1986) 183 Cal. App.3d 74, 77, 227 Cal.Rptr. 804 explained: "Section 1717 provides for the payment of a `reasonable' fee. After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure."
"It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court.... [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, *207 the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." (Melnyk v. Robledo (1976) 64 Cal.App.3d 618, 623-624, 134 Cal.Rptr. 602.) Although the terms of the contract may be considered, they "do not compel any particular award." (Vella v. Hudgins, supra, 151 Cal.App.3d at p. 520, 198 Cal.Rptr. 725; All-West Design, Inc. v. Boozer (1986) 183 Cal.App.3d 1212, 1227, 228 Cal.Rptr. 736 [trial court was not bound by contingency agreement in awarding fees under Civil Code section 1717]; Beverly Hills Properties v. Marcolino, supra, 270 Cal.Rptr. 605, 221 Cal.App.3d at p. Supp. 12 [affirming an award of reasonable attorney fees for pro bono legal services].)
In the present matter, the superior court based the award of attorney fees to the prevailing party, PLCM, on the number of hours expended by counsel multiplied by the prevailing market rate for comparable legal services in San Francisco, where counsel is located. No error appears. The superior court used a proper standard in calculating the fees.[4]
There was also sufficient evidence to support the amount of the award; in addition to the detailed documentation submitted by PLCM, the superior court was familiar with the quality of the services performed and the amount of time devoted to the case. The award was not clearly wrong; the superior court did not abuse its discretion.
Drexler contends that the superior court erred because it did not use a so-called cost-plus approach, based on a precise calculation of the actual salary, costs, and overhead of in-house counsel. Nothing in Civil Code section 1717 compels such an approach. In lieu of other authority, Drexler cites Trope v. Katz, supra, 11 Cal.4th at page 280, 45 Cal.Rptr.2d 241, 902 P.2d 259, to the effect that the term "attorney's fees" is generally defined as meaning the consideration that a litigant "actually pays or becomes liable to pay in exchange for legal representation." The point is inapposite. The question of how to measure attorney fees was not raised in Trope, which expressly involved only the "narrow issue" whether pro se attorney litigants could recover attorney fees. (Id. at p. 287, 45 Cal.Rptr.2d 241, 902 P.2d 259.) As we reiterated therein, the language of an opinion must be construed with reference to the facts presented by the case; the positive authority of a decision is coextensive only with such facts. (Id. at p. 284, 45 Cal.Rptr.2d 241, 902 P.2d 259.)[5]
*208 That is not to say that reasonable attorney fees under Civil Code section 1717 will not reflect many of the same factors considered in a cost-plus approach. Moreover, generally prevailing market rates necessarily take into consideration such factors as salaries, overhead, the costs of support personnel, and incidental expenses. However, as the Court of Appeal observed, the market value approach has the virtue of being predictable for the parties and easy to administer. By contrast, the cost-plus approach, in addition to being cumbersome, intrusive, and costly to apply, may distort the incentives for settlement and reward inefficiency. For these reasons, we conclude that the lodestar method, as applied to the calculation of attorney fees for in-house counsel is presumably reasonable, although in exceptional circumstances, the trial court is not precluded from using other methodologies.
Nor are we persuaded by Drexler's argument that awarding fees to in-house counsel based on prevailing market rates for attorney services, as a general matter, "most likely constitutes an unjustified windfall." As amicus curiae American Corporate Counsel Association points out, it is not always a cost-per-hour decision that drives a client to prefer the use of an in-house attorney. Drexler presented no evidence that the costs, in terms of overhead, salary, and other compensation for corporate in-house counsel, were necessarily less than the market rate for a law firm in the same location. There was no evidence in the record as to the exact amount defendants spent on this matter; nor did Drexler ever seek to ascertain that amount. In-house counsel did not bill PLCM for hourly work on this matter. As discussed, PLCM is charged annually, on a prospective basis, a proportional share of the expenses of operating the law division; it is unclear whether such annual charge-backs include all cost items comprising total overhead. The only evidence in the record, however, undercuts Drexler's assertion that PLCM's expenses for in-house counsel were less than the market rate for private counsel; in-house operating expenses in this matter were, instead, "analogous to those of other law offices, e.g., attorney and support-staff compensation, rental of office space and equipment, supplies, travel etc." Indeed, counsel for PCLM estimated that actual expenses for in-house counsel in this matter would have exceeded the market rate. (Cf. Garfield Bank v. Folb, supra, 25 Cal.App.4th at p. 1809, 31 Cal.Rptr.2d 239 [affirming use of lodestar approach in calculating attorney fee award for in-house counsel, and observing that in-house counsel's actual salary was "due to [his] relationship with [his employer] and not his experience in the market"].)
"`We do not want "a [trial] court, in setting an attorney's fee, [to] become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It ... is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps dwarfing the case in chief.'" (Serrano v. Unruh (1982) 32 Cal.3d 621, 642, 186 Cal.Rptr. 754, 652 P.2d 985.) Indeed, such wholly ancillary litigation on the question of salaries and costs and the internal economics of a law office could lead to an increase rather than a diminution of the costs of fee awards under Civil Code section 1717.
Requiring trial courts in all instances to determine reasonable attorney fees based on actual costs and overhead rather than an objective standard of reasonableness, i.e., the prevailing market value of comparable legal services, is neither appropriate nor practical; it "would be an unwarranted burden and bad public policy." (Shaffer v. Superior Court, supra, 33 Cal.App.4th at p. 1003, 39 Cal.Rptr.2d 506.)

III
For the foregoing reasons, the judgment of the Court of Appeal is affirmed.
*209 GEORGE, C.J., KENNARD, J., BAXTER, J., WERDEGAR, J., and BROWN, J., concur.
Concurring and Dissenting Opinion by CHIN, J.
I agree with the majority that as prevailing parties, Dearborn Insurance Company, Anglo-American Insurance, Ltd., and PLCM Group, Inc. (hereafter collectively PLCM) may recover from defendant David Drexler attorney fees under Civil Code section 1717[1] for the services of in-house counsel in this case. However, given the terms of the insurance contract here, I would limit the amount of the fee recovery to the actual cost of that representation. I disagree with the majority to the extent its opinion may be understood to hold otherwise.

I. PLCM May Recover Attorney Fees
The first question in this casewhether PLCM may recover attorney fees for the services of in-house counselhas a simple answer. Under section 1717, subdivision (a), "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." The insurance contract in this case provides: "If the Insured fails, after demand, to reimburse the [insurance companies] for any amounts within the deductible which the [insurance companies have] advanced, the [insurance companies] may bring suit to recover such amounts and shall also be entitled to recover interest from the date of demand, and attorneys' fees and costs incurred in bringing the action." Drexler breached the insurance contract by refusing to reimburse his insurers for amounts within the deductible that they advanced on his behalf. PLCM prevailed at trial on both the breach of contract claim and on Drexler's cross-complaint. Thus, PLCM was entitled to recover attorney fees under the contract and section 1717.
I reject Drexler's contention, based on Trope v. Katz (1995) 11 Cal.4th 274, 45 Cal.Rptr.2d 241, 902 P.2d 259 (Trope), that PLCM may not recover attorney fees because it used in-house counsel. There, in holding that an attorney litigating in propria persona may not recover fees under section 1717, we relied principally on the ordinary meaning of (1) the word "incur," which is "to `become liable' for" or "to become obligated to pay" and (2) the term "attorney fees," which is "the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation." (Trope, supra, 11 Cal.4th at p. 280, 45 Cal.Rptr.2d 241, 902 P.2d 259.) Drexler argues that corporations do not "incur attorney fees" for in-house counsel as Trope defines those terms. He is incorrect. As we suggested in Trope, but did not hold because the issue was not before us, the salary of in-house counsel "is the functional equivalent of the fee." (Id. at p. 291, 45 Cal.Rptr.2d 241, 902 P.2d 259.) A corporation should not forfeit its right to recover attorney fees simply because it anticipates its future need for litigation counsel and hires attorneys as employees to handle litigation that may subsequently arise. Thus, I conclude that under the contract and section 1717, PLCM may recover attorney fees for the services of in-house counsel.[2]

II. PLCM May Not Recover More Than Actual Costs Incurred
As the majority explains, the trial court awarded PLCM attorney fees based on *210 market value, i.e., the reasonable in-house attorney hours multiplied by the prevailing hourly rate in the community for comparable legal services. (Maj. opn., ante, 95 Cal.Rptr.2d at p. 205, 997 P.2d at p. 518.) As the majority also explains, Drexler argues the trial court should have used a "cost-plus approach," i.e., a calculation of the actual salary, costs, and overhead of in-house counsel. (Maj. opn., ante, at p. 207, 997 P.2d at p. 519.) The majority rejects Drexler's argument. It concludes that although a trial court has discretion "in exceptional circumstances" to use "methodologies" other than "the lodestar method" (id. at p. 208, 997 P.2d at p. 520), "[n]othing" in section 1717 "compels" use of the cost-plus approach (maj. opn., ante, at p. 207, 997 P.2d at p. 519).
In my view, because the contract in this case provides for recovery only of "attorneys' fees and costs incurred in bringing the action" (italics added), the cost-plus approach the majority describes establishes the maximum amount of an attorney fees award. In Reynolds Metals Co. v. Alperson (1979) 25 Cal.3d 124, 158 Cal. Rptr. 1, 599 P.2d 83 (Reynolds), we reviewed an attorney fees award to the defendants who defeated a claim based on two promissory notes. The notes contained a provision "for recovery of collection costs, including attorney's fees limited to 15 percent of the principal amount of the notes, in the event of default." (Id. at p. 127, 158 Cal.Rptr. 1, 599 P.2d 83.) The defendants did not sign the notes, but the plaintiff alleged they were nevertheless liable as alter egos of the bankrupt companies that did. (Ibid.) Citing section 1717's equitable purposesestablishing mutuality of remedy and preventing oppressive use of one-sided attorney fees provisionswe first held that the defendants could recover attorney fees even though they had not signed the notes containing the attorney fees provision. (Reynolds, supra, 25 Cal.3d at pp. 128-129, 158 Cal.Rptr. 1, 599 P.2d 83.) We then held that the trial court erred in awarding an amount of attorney fees in excess of the contractual limit, explaining: "Because the promissory notes contained provision limiting attorney's fees to 15 percent of the amount of the notes ..., recovery of fees under section 1717 must be similarly limited.... [T]he statutory right should be no greater than the contractual right." (Reynolds, supra, 25 Cal.3d at p. 130, 158 Cal.Rptr. 1, 599 P.2d 83.) Thus, under Reynolds, a trial court may not award an amount of attorney fees that exceeds contractual limits on the award.
Applying Reynolds on facts like those now before us, the court in San Dieguito Partnership v. San Dieguito River Valley Regional etc. Authority (1998) 61 Cal. App.4th 910, 919, 72 Cal.Rptr.2d 91 (San Dieguito) rejected the same market rate approach the majority now adopts. There, a partnership unsuccessfully sued a joint powers authority (JPA) for breach of a settlement agreement. The agreement contained a provision entitling the prevailing party in any action to enforce the agreement "`to an award in the amount of attorneys' fees and costs incurred in connection with the prosecution or defense of such action.'" (Id. at p. 914, 72 Cal. Rptr.2d 91.) The trial court awarded the successful JPA a "lodestar" amount of attorney fees, which it calculated by multiplying the number of hours spent on the case by "`fair market hourly rates,'" even though counsel actually charged the JPA "`below market rates'...." (Id. at p. 915, 72 Cal.Rptr.2d 91.) On appeal, the partnership argued that "under the terms of [the agreement's attorney fees] provision, JPA was entitled to recover only those attorney fees it actually `incurred,' and the court was without discretion to award a greater amount." (Id. at p. 917, 72 Cal. Rptr.2d 91.) In response, the JPA cited the same provision of section 1717 on which the majority relies"[Reasonable attorney's fees shall be fixed by the court"and argued that it showed "the Legislature intended to allow the court the *211 discretion to award a prevailing party more attorney fees than it actually incurred." (San Dieguito, supra, 61 Cal. App.4th at p. 917, 72 Cal.Rptr.2d 91.)
The appellate court in San Dieguito rejected the JPA's claim, holding that "even under section 1717," where the parties "specifically agree the prevailing party shall be entitled to an award `in the amount of attorneys' fees and costs incurred,' the court has no ... power" to award fees "in an amount greater than the prevailing party actually incurs...." (San Dieguito, supra, 61 Cal.App.4th at p. 919, 72 Cal.Rptr.2d 91.) As direct authority for this conclusion, the court cited our holding in Reynolds that "the statutory right should be no greater than the contractual right." (San Dieguito, supra, 61 Cal.App.4th at p. 919, 72 Cal.Rptr.2d 91.) The court also reasoned that a contrary conclusion would be "inconsistent with" Trope. (San Dieguito, supra, 61 Cal. App.4th at p. 917, 72 Cal.Rptr.2d 91.) It explained: "In concluding that the Legislature did not intend [to allow attorneys representing themselves to recover attorney fees under section 1717], the [Trope] court stated in relevant part as follows: `[B]y its terms section 1717 applies only to contracts specifically providing that attorney fees "which are incurred to enforce that contract" shall be awarded to one of the parties or to the prevailing party.... To "incur" a fee, of course, is to "become liable" for it (Webster's New Internat. Diet. (3d ed.1961) p. 1146), i.e., to become obligated to pay it.... [¶] [T]he usual and ordinary meaning of the words "attorney's fees," both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation.' (Trope v. Katz, supra, 11 Cal.4th at p. 280, 45 Cal.Rptr.2d 241, 902 P.2d 259, italics in original.) Thus, under the Supreme Court's reading of the statute, the object of the provision in section 1717 allowing the recovery of `reasonable attorney's fees' is to reimburse a party for attorney fees the party has paid, or to indemnify the party for fees the party has become liable to pay, provided the fees so paid or incurred are reasonable. (Trope v. Katz, supra, 11 Cal.4th at p. 282, 45 Cal.Rptr.2d 241, 902 P.2d 259.)" (San Dieguito, supra, 61 Cal.App.4th at pp. 917-918, 72 Cal.Rptr.2d 91.)
In my view, the court in San Dieguito correctly applied Reynolds and Trope and reached the right conclusion, and the majority fails to demonstrate otherwise. The majority disapproves San Dieguito to the extent it relied on Trope's statement that "the usual and ordinary meaning of the words `attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation." (Trope, supra, 11 Cal.4th at p. 280, 45 Cal.Rptr.2d 241, 902 P.2d 259; see maj. opn., ante, 95 Cal.Rptr.2d at p. 207, fn. 5, 997 P.2d at p. 519, fn. 5.) According to the majority, this statement in Trope is "inapposite" because "[t]he question of how to measure attorney fees was not raised in Trope ...." (Maj. opn., ante, at p. 207, 997 P.2d at p. 519.) However, although Trope may not be dispositive here given the issue it addressed, it certainly is not irrelevant. Moreover, the majority fails to recognize that the court in San Dieguito also based its holding directly on our decision in Reynolds.
Indeed, the majority makes only passing reference to Reynolds in a footnote (maj. opn., ante, 95 Cal.Rptr.2d at p. 207, fn. 5, 997 P.2d at p. 519, fn. 5) and never directly considers our holding there that "the statutory right should be no greater than the contractual right." (Reynolds, supra, 25 Cal.3d at p. 130, 158 Cal.Rptr. 1, 599 P.2d 83.) Instead, citing two Court of Appeal decisions and one from a superior court appellate department, the majority declares that "[although the terms of the contract may be considered, they `do not compel any particular award.'" (Maj. opn., ante, at p. 207, 997 P.2d at p. 519.)
Upon examination, the two Court of Appeal decisions the majority cites do not *212 support its conclusion, and in fact support the principle that contractual terms establish the maximum amount of an attorney fees award. In Vella v. Hudgins (1984) 151 Cal.App.3d 515, 198 Cal.Rptr. 725 (Vella), both parties challenged on appeal the amount of a fee award under an attorney fees clause in a deed of trust. The court affirmed the award, holding that its amount did not need to equal the amount the successful party owed her counsel under a contingency fee contract. (Id. at pp. 519-522, 198 Cal.Rptr. 725.) But the court also indicated that the award could not be more than the amount owed explaining: "We do accept defendant's initial premise, that the award of fees in this case was an item of costs and, thus, limited to those costs reasonably and necessarily incurred by the prevailing party." (Id. at p. 519, 198 Cal.Rptr. 725.) The court found this principle supported by City of Los Angeles v. Knapp (1936) 7 Cal.2d 168, 60 P.2d 127 (Knapp), which "concluded: `Where [statutes authorize an attorney fees award], such allowance must be made to the party to the action for fees paid or incurred by him.... The allowance of attorneys' fees is made to reimburse the defendant for fees which he has paid, or to indemnify him for fees which he has not paid, but has incurred. [Citation.]'" (Vella, supra, 151 Cal.App.3d at pp. 519-520, 198 Cal.Rptr. 725.) The Vella court also found that its agreement with defendant's premise "avails him nothing, since we have already concluded that plaintiff had [actually] incurred a liability for attorney's fees far in excess of the $50,000 award." (Id. at p. 520, 198 Cal.Rptr. 725.) The court later explained that the fee award need not "equal the full amount of the client's obligation" to counsel. (Id. at p. 521, 198 Cal.Rptr. 725, italics added.) Thus, Vella supports the conclusion that the fee amount actually paid, owed, or incurred establishes a maximum fee award, which a court may reduce to make reasonable.
All-West Design, Inc. v. Boozer (1986) 183 Cal.App.3d 1212, 228 Cal.Rptr. 736 is completely consistent with this conclusion. There, although stating that an attorney fees award in "exactly" the amount awardable under a contingency fee contract "was unnecessary," the court also noted that "[t]he actual contingent fee would have been higher [than the amount awarded], assuming no offset credits." (Id. at p. 1227, 228 Cal.Rptr. 736, original italics.) Thus, neither of the Court of Appeal decisions the majority cites supports an award of attorney fees in an amount greater than that recoverable under the contract's terms. Instead, both support the principle that the contract's terms establish the maximum amount of an attorney fees award.
The third decision the majority cites, Beverly Hills Properties v. Marcolino (1990) 221 Cal.App.3d Supp. 7, 270 Cal. Rptr. 605 (Beverly ), provides little help in deciding the issue here. The main focus of the Beverly opinion was determining whether attorney fees "are incurred"and therefore recoverablewithin the meaning of section 1717 where counsel incurs costs and expenses but does not charge the client a fee. (Beverly, supra, 221 Cal. App.3d Supp. at p. 11, 270 Cal.Rptr. 605.) The answer to this question is not relevant to determining whether section 1717 authorizes a market rate fee award that exceeds the actual cost of representation. In a footnote, the Beverly opinion also considered whether the operative attorney fees clause was valid to the extent it "require[d] the successful party to have actually incurred fees before being entitled to recover them" and "prohibited] recovery of attorney fees if the successful party is not actually charged by his attorney." (Beverly, supra, 221 Cal.App.3d Supp. at p. 10, fn. 3, 270 Cal.Rptr. 605.) Beverly characterized these "portions" of the attorney fees clause as "waiver provisions" and found them "void" because section 1717 "expressly prohibits a waiver of attorney fees available thereunder." (Beverly, supra, 221 Cal.App.3d Supp. at p. 10, fn. 3, 270 Cal.Rptr. 605.) However, Beverly's discussion of this issue is conclusory; it *213 includes no analysis and cites no cases. It does not consider, for example, our holding in Reynolds that "the statutory right should be no greater than the contractual right." (Reynolds, supra, 25 Cal.3d at p. 130, 158 Cal.Rptr. 1, 599 P.2d 83.) Moreover, "[n]either party" in Beverly even "mentioned" the issue, so the opinion addressed it without briefing. (Beverly, supra, 221 Cal.App.3d Supp. at p. 10, fn. 3, 270 Cal.Rptr. 605.) Unlike the majority, I therefore conclude that Beverly is not instructive on the question we are considering.
For its conclusion, the majority also relies heavily on the sentence in section 1717, subdivision (a), that provides, "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." According to the majority, consistent with this sentence and its purpose, "the trial court has broad authority to determine the amount of a reasonable fee." (Maj. opn., ante, 95 Cal.Rptr.2d at p. 206, 997 P.2d at p. 518.) Presumably, then, under the majority's view of section 1717, nothing prevents a court, in setting a reasonable fee based on its assessment of the circumstances, from enhancing a fee award by applying a multiplier to the market rate amount. (See Press v. Lucky Stores, Inc. (1983) 34 Cal.3d 311, 322, 193 Cal.Rptr. 900, 667 P.2d 704.)
Although I agree that a trial court has broad authority to determine the amount of a reasonable fee, I do not agree that section 1717, in directing that "[reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit," authorizes a market rate fee award that exceeds the actual cost of representation. The Legislature added this language to the statute in 1981 simply to clarify the procedure for awarding attorney fees. Before the amendment, courts disagreed as to whether recoverable attorney fees constituted (1) special damages that had to be pled and were determined by the jury, or (2) costs that did not have to be pled and were fixed by the court. The 1981 amendment simply adopted the latter approach, specifying that fees are costs (not special damages) to be fixed by the court (not the jury). (See Santisas v. Goodin (1998) 17 Cal.4th 599, 629, 71 Cal. Rptr.2d 830, 951 P.2d 399 (conc. & dis. opn. of Baxter, J.).) It did not confer on the trial court broad authority to make a market rate fee award regardless of the actual costs of representation.
Nor do I find the policy considerations the majority cites compelling. The majority asserts that, unlike the market rate approach, the cost-plus approach "may distort the incentives for settlement and reward inefficiency." (Maj. opn., ante, 95 Cal.Rptr.2d at p. 208, 997 P.2d at p. 520.) However, the majority does not explain the basis for this assertion, and it seems that in fact the majority's market rate approach is more likely to produce these undesirable effects. In-house costs will often be lower than market costs because, as amicus curiae American Corporate Counsel Association (Counsel Association) explains, "[i]n-house counsel have the rare advantage of operating with a full-time focus on and a deep understanding of their client's business and legal needs." Thus, a potential for recovery of a market rate fee that exceeds actual in-house costs may make corporations less willing to settle. Corporations may also have less incentive to ensure that their attorneys work efficiently and keep hours down if they may potentially recover fees for those hours based on a market rate that exceeds the in-house rate. In any event, using either approach, a trial court may simply reduce a fee award to account for inefficiency. At worst, then, a cost-plus approach creates no greater problem in this regard.
I also disagree with the majority's response to Drexler's claim that a market rate approach will generally produce an unjustified windfall. Citing amicus curiae Counsel Association, the majority asserts that "cost-per-hour" does "not always ... drive[]" the decision to select in-house counsel. (Maj. opn., ante, 95 Cal.Rptr.2d *214 at p. 208, 997 P.2d at p. 520.) What Counsel Association actually says is that this decision "often revolves around issues of cost, in addition to other, less tangible factors." (Italics added.) Counsel Association also states that corporations make this decision "based on an assessment of their presumed risks versus predictable costs." Thus, costs surely play a major, and often determinative, role in the decision-making process. Moreover, by definition a market rate includes a profit component on top of costs. (See In re Cassell (W.D.Va.1990) 119 B.R. 89, 92.) Thus, a market rate approach will often penalize the losing party and reward the corporation by resulting in a fee award that exceeds cost. The majority does not explain how this likely result squares with the equitable purposes of section 1717 that are central to the majority's analysis. On the other hand, a cost-plus approach, by awarding the victorious corporation the amount to which it is entitled, but no more, would punish neither the corporation for using in-house counsel nor the losing party. Thus, it would better serve the statute's equitable goals and serve the purpose of a fee award, which is reimbursement, not punishment. (Knapp, supra, 7 Cal.2d at p. 175, 60 P.2d 127.)
Specifically as to this case, I also disagree with the majority that the evidence in the record "undercuts" Drexler's assertion that in-house counsel's expenses here were less than the market rate for private counsel. (Maj. opn., ante, 95 Cal.Rptr.2d at p. 208, 997 P.2d at p. 520.) According to the majority, PLCM's counsel "estimated that actual expenses for in-house counsel in this matter would have exceeded the market rate." (Ibid.) However, because counsel made this representation during oral argument and the appellate record apparently contains no evidence to support it, we should not consider it. The majority also quotes the declaration of PLCM's trial counsel, which stated: "[T]he San Francisco office of [in-house counsel] is a `cost center' for purposes of [the] annual budget process, with expenses of operation analogous to those of other law offices, e.g., attorney and support-staff compensation, rental of office space and equipment, supplies, travel, etc." However, it is far from clear that this statement refers to the amount of these items, as opposed to simply categories of expenses. Moreover, even if it refers to amount, it does not establish or even indicate that in-house costs are not lower than market costs; "analogous" does not mean "equal to." In any event, as I have explained, by definition a market rate includes more than operating costs; it also includes a profit component. Thus, the record does not undercut Drexler's assertion.
The likelihood that use of a market rate, which by definition includes a profit component, will produce a fee award that exceeds actual costs raises an additional issue that, although not raised by the parties, is relevant to the question before us. Several federal and state courts have held that a market rate fee award implicates proscriptions against fee splitting and the unauthorized practice of law to the extent it enables a corporation to profit from its legal department. To avoid this problem, courts have required either use of a costplus approach or a showing that all of the fee award will be put back into legal operations, rather than general corporate coffers. (E.g., Kean v. Stone (3d Cir.1992) 966 F.2d 119, 123; Harper v. Better Business Services, Inc. (11th Cir.1992) 961 F.2d 1561, 1564; American Federation of Gov. Employees v. FLRA (D.C.Cir.1991) 292 App.D.C. 1, 944 F.2d 922, 934-937; PPG Industries v. Celanese Polymer Specialties Co. (Fed.Cir.1988) 840 F.2d 1565, 1570; Curran v. Department of Treasury (9th Cir.1986) 805 F.2d 1406, 1408-1410; Nat. Treasury Emp. U. v. U.S. Dept. of Treasury (D.C.Cir.1981) 211 App.D.C. 259, 656 F.2d 848; Thompson v. Chemical Bank (N.Y.Civ.Ct.1975) 84 Misc.2d 721, 375 N.Y.S.2d 729, 736-737, 740; but see Central States v. Central Cartage Co. (7th Cir.1996) 76 F.3d 114, 115-117 [finding no ethical issues with market rate award because litigant, not counsel, owns the *215 award]; Johnston v. Detroit Hoist & Crane Co. (1985) 142 Mich.App. 597, 370 N.W.2d 1, 3 [although finding ethical issue premature, noting that fee award is to party, not attorney]; see also Cal. Compendium on Prof. Responsibility, pt. 11 A, State Bar Formal Opn. No.1987-91, p. 273.) My construction of section 1717 avoids this potential problem.
Finally, the majority's concern that a cost-plus approach would be too cumbersome, costly, and intrusive seems overstated. Losing parties would have a substantial disincentive to pursue the protracted course the majority suggests because cost-and-fee awards include costs and fees incurred in litigating the amount of the award. Moreover, according to amicus curiae Los Angeles County Bar Association, 32 percent of corporate law departments participating in a 1999 survey tracked their costs and charged them back to their corporate clients. As the record shows, PLCM's counsel operates in just this manner. According to the sworn declaration of PLCM's trial attorney: "[T]he costs of the [in-house] law department ... (including salaries) are charged to each corporate subsidiary each year in proportion to the number and complexity of their files. Particular costs attributable to each matter are charged directly to the corporations involved." Similarly, according to the sworn declaration of the in-house legal department's financial manager, the operating expenses of the office that performed the legal work in this case, including "attorney and support-staff compensation, rental of office space and equipment, supplies, travel, etc.," are "charged back to the ... companies served by [in-house counsel] each year." Citing this declaration, PLCM responded to Drexler's claim that fees are not recoverable because "traditional law-firm invoices did not change hands here" by representing to the trial court that "the costs [of in-house counsel] (including everything from attorney and staff salaries to supplies and equipment) are charged back to the subsidiaries receiving the benefits of those services in the corporation's annual budget process."[3] Because many corporations use such a system for tracking and allocating in-house legal costs, a cost-plus approach often would seem to involve only slight inconvenience. Given these considerations, administrative concerns do not, in my view, justify ignoring the limits of the parties' contract.
NOTES
[1] Ironically, Drexler, who appeared in propria persona in superior court and in the Court of Appeal, urges that corporations "should be encouraged to seek independent review of their legal situations by independent counsel," in the interest of encouraging settlement and avoiding unmeritorious claims. We disagree that in-house lawyers are inherently biased advisors to their corporate employers; on the contrary, to the extent they share management's business orientation, it would appear that in-house counsel have every incentive to analyze legal issues objectively and professionally and to conduct litigation in a cost-effective manner.
[2] Drexler suggests that Gatfield Bank v. Folb, supra, 25 Cal.App.4th 1804, 31 Cal.Rptr.2d 239, was "brought into question" by Trope. Not so. Trope disapproved Garfield Bank only to the extent that it referred, in passing, to authority for awarding attorney fees to pro se litigants. (Trope v. Katz, supra, 11 Cal.4th at p. 292, 45 Cal.Rptr.2d 241, 902 P.2d 259 ["We emphasize, however, that we express no opinion regarding any other aspect of the reasoning or the holding[] of the ... Court of Appeal decision[]" in Garfield Bank].)
[3] Drexler asserts that Aon Corporation engaged in the unlawful practice of law because its in-house counsel, Aon Corporation Law Division, represented separate corporate entities, including subsidiary PLCM, and charged for those legal services. The point, which was not raised below or in the petition for review by this court, was waived.
[4] In-house counsel for PLCM did not keep contemporaneous daily billing records for work on this matter; for the purposes of the fee request, PLCM prepared a detailed reconstruction of time spent on specific legal tasks performed in the case. We note that maintaining contemporaneous records by in-house counsel of hours spent on a case involving a possible request for attorney fees would facilitate accurate calculation of the lodestar and minimize possible inaccuracies in reconstructing time spent on a matter months or even years after the fact.
[5] Our reference in Trope to the general definition of "attorney's fees" as the sum a litigant "actually pays or becomes liable to pay" for legal representation (11 Cal.4th at p. 280, 45 Cal.Rptr.2d 241, 902 P.2d 259) was not intended to imply that fees can be recovered only when, and to the extent that, a litigant incurs fees on a fee-for-service basis, a question not raised therein. To the extent it suggests otherwise, relying on the same language in Trope, San Dieguito Partnership v. San Dieguito River Valley Regional etc. Authority (1998) 61 Cal.App.4th 910, 72 Cal.Rptr.2d 91 is disapproved. The concurring and dissenting opinion incorrectly concludes that the contract entered by the parties herein, merely by referring to costs "incurred," required the court to apply a cost-plus approach to calculate "reasonable" fees under Civil Code section 1717. The parties did not agree to any particular method for calculating fees or purport to establish a specific monetary cap on attorney fees as in Reynolds Metals Co. v. Alperson (1979) 25 Cal.3d 124, 158 Cal.Rptr. 1, 599 P.2d 83. Nor did Reynolds state or imply that a cost-plus method must be applied or that use of the lodestar approach is not "reasonable" under Civil Code section 1717.
[1] All further statutory references are to the Civil Code.
[2] Like the majority, I do not address Drexler's belated claim that because the represented entities in this case are either subsidiaries of or completely unaffiliated with Aon Corporation, their representation by Aon Corporation's in-house attorneys constituted the unauthorized practice of law.
[3] The majority asserts that annual charges to PLCM for in-house legal services are made "on a prospective basis." (Maj. opn., ante, 95 Cal.Rptr.2d at p. 208, 997 P.2d at p. 520.) I find no evidence in the record to support this assertion. Apparently, it is based on another representation from counsel at oral argument.